## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, | ) )  ) |
| Plaintiff, | ) Civil Action No. 07-1443 (RMC) )  |
| v. | ) **Hon. Deborah A. Robinson** )  |
| WEST COAST FACILITIES INC., | ) )  |
| Defendant. | ) ) |

**NOTICE OF MOTION AND MOTION TO COMPEL RESPONSES BY INTELSAT USA SALES CORPORATION TO THE REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY WEST COAST FACILITIES INC.**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. Proc. 37(a), West Coast Facilities, Inc. ("West Coast") moves to compel responses and production of documents pursuant to the three sets of written requests for documents (attached to the Declaration of Ira P. Rothken ("Rothken Decl.") as Exhibits E, F and G) served on the plaintiff, Intelsat USA Sales Corp. ("Intelsat"), as a result of Intelsat's refusal to produce all documents responsive to those requests that are otherwise not privileged. West Coast also moves for an order that Intelsat pay to the West Coast reasonable costs and attorney fees incurred by West Coast in connection with this proceeding upon filing of a supporting declaration as to such costs and fees. The motion is made on the grounds that information and documents demanded by the requests for production are relevant to the subject matter of the action and do not relate to privileged matters, and the refusal by Intelsat to provide complete responses is without justification. The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Ira P. Rothken, and the subject requests for production which are

included with the responses and objections to those requests by Intelsat attached to the Declaration of Ira P. Rothken ("Rothken Decl.") as Exhibits E, F and G.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

This case is for breach of an agreement for satellite services, the "Non-Exclusive Service Agreement," between Intelsat and West Coast Facilities. Rothken Decl., Exhibit "C." The central issues in this case include whether the agreement is enforceable or void, the actual damages resulting from any breach of the agreement and whether Intelsat adequately mitigated its damages for the alleged anticipatory breach of contract. Accordingly, West Coast seeks documents relevant to: the agreement, the claim of breach, West Coast's affirmative defenses bearing on the enforceability of the agreement, the purported damages to Intelsat for the claimed breach and any efforts by Intelsat to mitigate those claimed damages. West Coast served three separate sets of written requests for production for documents relevant to each of those issues. Rothken Decl., Exhs. "E"-"G." Although Intelsat produced some documents, the production was minimal and fell far short of responding to the requests for production. In other respects, Intelsat refused to produce documents responsive to the following requests for production propounded in West Coast's Second Set Document Requests:

    1.    All documents concerning any allegation that Intelsat was in violation of any law, rule, regulation, treaty, or third party rights regarding any part of the satellite service described in the contracts at issue in this matter or its functional equivalent including, but not limited to, third party patent rights and government regulations.

    OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

    2.    All documents concerning any impairment, defects, repairs, or complaints regarding any part of the satellite service described in the contracts at issue in this matter or its functional equivalent.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

4.      All documents concerning all rights, including, but not limited to, intellectual property rights and licenses, necessary for Intelsat to provide and fulfill the satellite service described in the contracts at issue in this matter.

OBJECTION: Intelsat incorporates its general objections herein, Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

5.      All documents concerning cease and desist letters or their functional equivalent that relate in whole or in part to the satellite service described in the contracts at issue in this matter or to Intelsat.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

6.      All documents concerning any litigation involving Intelsat that relates to satellite services.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential

Intelsat has refused to produce documents responsive to these requests.  In other respects, Intelsat has failed to produce documents to the majority of the three sets of requests for production, notwithstanding that Intelsat acknowledged in its

responses and objections to those requests that it would produce documents. Intelsat's refusal to produce document is unwarranted. For instance, Intelsat disclosed in its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) in support of its claimed damages that:

> [F]rom the execution of the agreement, Intelsat reserved the bandwidth spectrum required by defendant in the contract for 22 months prior to the time called for performance, and was unable to lease that capacity. The value of that 22 months' capacity is $1,584,000.00.

Rothken Decl., Ex. "D." Intelsat itself created the relevancy in this case of the "bandwidth spectrum" as reserved by Intelsat for West Coast, as well as Intelsat's purported inability to lease the "capacity" of that bandwidth. However, Intelsat produced no documents or evidence to support the alleged reservation of bandwidth or that Intelsat was unable to lease that reserved bandwidth.

Intelsat asserts broad objections based on relevance and the burden of producing them. Not only are the documents limited in number (a total of 16 requests for production), but they are narrow in scope pertaining to the claims and defenses at issue in this case. Consequently, Intelsat's broad objections are not well taken and should be overruled.

Despite the parties' attempt to meet and confer regarding the subject matter of the present Motion, they were unable to reach an agreement to obviate the Motion. *See* Declaration of Ira P. Rothken, filed concurrently herewith.

### A.    Intelsat's Performance Under the Satellite Services Agreement

West Coast seeks documents that are relevant to Intelsat's performance of the agreement at issue (*See* Exhs. E, F and G to Rothken Decl. -First Set of RFPs, #1, #3; Second Set of RFPs, #1, #2, #4, #5, #6; Third Set of RFPs, #1). As an element of a claim for breach of contract, Intelsat has the burden of proving that it was "ready, willing and able to provide telecommunications services" pursuant to the agreement with West Coast. Complaint, ¶7. *See Ledain v. Town of Ontario*, 746 N.Y.S.2d 760, (N.Y.Sup.,2002) (Elements of cause of action for breach of

contract are: (1) formation of contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform and (4) resulting damage); *See also Greenwich Ins. Co. v. Ice Contrs., Inc.*, 541 F. Supp. 2d 327, 333 (D.D.C. 2008) ("To prevail on a breach of contract claim, plaintiff must demonstrate that... plaintiff performed its contractual obligations….") (citation omitted). West Coast requires evidence to support its defense that Intelsat did not perform or was not ready to perform or could not perform its obligations under the agreement. West Coast's need for such evidence is underscored by the fact that West Coast itself never utilized the services of Intelsat under the agreement. Clearly, any notice by Intelsat of any problems with its service, including violations of law, defects or claims by third parties who contracted for the same or similar satellite services, is relevant to Intelsat's claim that it had performed or was ready to perform its obligations under the agreement, as required for its breach of contract claim.

Moreover, whether Intelsat was on notice of any violations of law or third party rights is directly probative of Intelsat's performance of paragraph 9.3 of the agreement, by which Intelsat warranted that it was "in compliance with all applicable laws and regulations of any jurisdiction to which it is subject concerning the subject matter of [the] Agreement." *See* Declaration of Ira P. Rothen, Exhibit "A." Intelsat's express contractual obligation under paragraph 9.3 requires discovery of the existence of any violation by Intelsat of any law, rule, regulation, treaty, or third party rights regarding any part of the satellite service.

### B.    Third Party Complaints Regarding Intelsat's Failure to Provide Satellite Services

West Coast seeks documents that are relevant to third party complaints and other problems faced by Intelsat in the rendering of its satellite services (*See* Exhs. E and  to Rothken Decl. -First Set of RFPs, #7, #8; Second Set of RFPs, #1, #2, #4, #5, #6). At issue in this case is the measure of Intelsat's damages and whether Intelsat breached its duty to mitigate damages. Rothken Decl., Ex. "B" (Answer),

p.4.  Also at issue is whether the services agreement is void for violating public policy.  *Id.*, p.5.  To support these affirmative defenses, West Coast seeks to establish that Intelsat suffered no actual damages by showing that Intelsat did not suffer any shortage of bandwidth as a result of the alleged breach by West Coast and that Intelsat could have mitigated its damages by reallocating satellite bandwidth to third parties.  The absence of any third party complaints as to inadequate bandwidth is directly probative of the extent to which West Coast could have and did reallocate satellite bandwidth.  On the other hand, any third party complaints that implicate the same bandwidth spectrum as that purportedly reserved for West Coast (*see* Rothken Decl., Ex. "D," Intelsat disclosure no. 3 re damages) would certainly undermine Intelsat's claim of damages.

Such third party discovery is all the more necessary given that West Coast itself did not utilize the services under the agreement with Intelsat.  If Intelsat was able to reallocate bandwidth to third parties and did in fact do so, the agreement provision for all amounts due for the full term of the agreement should be rendered invalid for violating public policy and for failing to reasonably approximate Intelsat's probable damages.  *See LeRoy v. Sayers,* 217 A.D.2d 63, 635 N.Y.S.2d 217 (N.Y.A.D. 1 Dept.,1995) (a stipulated amount of liquidated damages that does not bear a reasonable relation to the actual amount of probable damage that would befall defendant in the event of plaintiff's default constitutes a penalty); see also *Techworld Hotel Assocs. v. NCS Pearson, Inc.*, 2003 U.S. Dist. LEXIS 11933, *6-7 (D.D.C. July 9, 2003) ("A court may deem a liquidated damages clause invalid as a penalty on the grounds of public policy if it is plainly without reasonable relation to any probable damage which may follow a breach.") (citation omitted).

### C.    Intelsat's Intellectual Property Information

West Coast seeks information and documents relevant to its claims that Intelsat had the capacity to reallocate satellite bandwidth, enlarge bandwidth for an existing customer, or to otherwise modify any allocation of satellite bandwidth.  (*See* Exhs. E, F and G to Rothken Decl. - First Set of RFPs, #2, #7,

#8, #9; Second Set of RFPs, #1, #3, #4; Third Set of RFPs, #1).  West Coast also seeks discovery regarding the scope of Intelsat's purported capacity for bandwidth.  This information would be disclosed by the requested documents that relate to any intellectual property rights and/or licenses of Intelsat necessary for Intelsat to provide satellite service, which would include documents relating to the extent and specific nature of Intelsat's intellectual property rights to use and itself license the satellite technology at issue.  Such information is critical for the issues of the extent of Intelsat's actual damages and capacity to mitigate damages.  For instance, Intelsat's rights or licenses may limit Intelsat to a specific range of bandwidth for the technology, which is relevant to Intelsat's claim of reservation of bandwidth for West Coast.  On the other hand, Intelsat's intellectual property rights may be extremely broad, which would tend to minimize Intelsat's actual damages to point that the purported reservation of bandwidth to West Coast would have *de minimus* impact.  Discovery as to Intelsat's intellectual property rights is probative of the breadth and capacity of Intelsat's satellite technology and Intelsat's claimed damages.

### D.    Documents Relevant to Communications Regarding the Agreement

West Coast seeks information and documents regarding relevant communications between West Coast and Intelsat and Intelsat's discussions and deliberations regarding West Coast.  (*See* Exh. E to Rothken Decl. - First Set of RFPs, #4, #5).  All communications between the parties to this case are indisputably relevant and should be produced.  Intelsat asserts general objections that are not well taken and should be overruled.

### E.    Documents Otherwise Relevant to the Complaint

West Coast seeks information and documents generally relevant to the claims and issues in this case, including the allegations in the Complaint by Intelsat, Intelsat's initial disclosures, the contracts at issue in this case, damages and efforts by Intelsat to mitigate damages (*See* Exhs. E and F to Rothken Decl. -

First Set of RFPs, #1, #2, #3, #6 #7, #8, #9; Second Set of RFPs, #3).  Documents that support or refute any claim by Intelsat are clearly relevant to this case, including any and all agreements and contracts between the parties.  Moreover, discovery on issues made relevant by Intelsat by its initial disclosures, including its disclosures regarding Intelsat's claimed damages, should be produced.

The document requests propounded to Plaintiff Intelsat are directly relevant to both the breach of contract and *quantum meruit* claims by Intelsat as well as West Coast's affirmative defenses.  The burden on Intelsat to respond by producing responsive documents is thus justified and outweighed by West Coast's need for such discovery.

Dated: August 1, 2008          ROTHKEN LAW FIRM LLP

Ira P. Rothken, Esq.,
Attorney for Defendant West Coast
Facilities Inc.

3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone:   (415) 924-4250
Facsimile:    (415) 924-2905

Brendan J. McMurrer (DC Bar # 493424)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Phone:  (202) 736-8000
Fax:      (202) 736-8711
Email:   bmcmurrer@sidley.com

Attorneys for Defendant,
WEST COAST FACILITIES INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1, 2008, a copy of the

foregoing document was served upon the following by electronic mail and eFiling:

> David I. Bledsoe, Esq.
> 300 North Washington Street, Suite 708
> Alexandria, VA  22314
> Tel: (703) 379-9424
> Fax: (703) 684-1851
> bledsoelaw@earthlink.net

_____
Jared R. Smith (CA Bar # 130343)
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone:  (415) 924-4250
Facsimile:   (415) 924-2905

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, | ) ) ) |
| Plaintiff, | ) Civil Action No. 07-1443 (RMC) |
| v. | ) **Hon. Deborah A. Robinson** |
| WEST COAST FACILITIES INC., | ) ) ) |
| Defendant. | ) ) |

## DECLARATION OF IRA P. ROTHKEN IN SUPPORT OF MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER

I, IRA P. ROTHKEN, hereby declare:

1.      I am an attorney duly licensed and admitted to appear *pro hac vice* in this proceeding on behalf of the defendant, West Coast Facilities Inc.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      On behalf of the defendant, I met and conferred via telephone and email correspondence with David I. Bledsoe, counsel of record for the plaintiff, Intelsat USA Sales Corporation, on the subject matter of the defendant's Motion to Compel Responses by Intelsat USA Sales Corporation to the Requests for Production of Documents Propounded by West Cost Facilities Inc.  Mr. Bledsoe and I were not able to reach an agreement to resolve the parties' disputes with regard to the subject matter of that motion or the subject requests for production and responses attached hereto as Exhibits E, F and G.

3.      On behalf of the defendant, I met and conferred via telephone and email correspondence with Mr. Bledsoe, counsel of record for the plaintiff, Intelsat USA

Sales Corporation, on the subject matter of the defendant's Motion to Compel Deposition Testimony Per Notice of Deposition to Intelsat USA Sales Corporation Issued by West Coast Facilities Inc. Pursuant to F.R.Civ.P. Sec. 30(b)(6). Mr. Bledsoe and I were not able to reach an agreement to resolve the parties' disputes with regard to the subject matter of that motion or the subject deposition and noticed deposition topics, attached hereto as exhibit H and objections attached hereto as exhibit I.

4.      On behalf of the defendant, I met and conferred via telephone and email correspondence with Mr. Bledsoe, counsel of record for the plaintiff, Intelsat USA Sales Corporation, on the subject matter of the defendant's Motion for Protective Order Against Notice of Deposition to West Coast Facilities Inc. Issued by Plaintiff Intelsat USA Sales Corporation Pursuant to F.R.Civ.P. Sec. 30(b)(6). Mr. Bledsoe and I were not able to reach an agreement to resolve the parties' disputes with regard to the subject matter of that motion or the subject deposition and noticed deposition topics, attached hereto as exhibit J.

5.      Attached hereto as Exhibit "A" is a true and correct copy of the Complaint in the pending action *Intelsat USA Sales Corp. v. West Coast Facilities, Inc.*, case no. 07-1443 (RMC) in the Federal District Court for the District of Columbia.

6.      Attached hereto as Exhibit "B" is a true and correct copy of the Answer by West Coast Facilities to the Complaint that this action.

7.      Attached hereto as Exhibit "C" is a true and correct copy of the Non-Exclusive Service Agreement between Intelsat USA Sales Corp. and Penthouse Media Group (CA) Inc. that is the subject of the present action.

8.      Attached hereto as Exhibit "D" is a true and correct copy of the initial disclosures I received from counsel for plaintiff Intelsat USA Sales Corp.

9.      Attached hereto as Exhibit "E" is a true and correct copy of Plaintiff Intelsat's Objections and Responses to First Set of Document Requests of Defendant West Coast Facilities, Inc.

10.    Attached hereto as Exhibit "F" is a true and correct copy of Plaintiff Intelsat's Objections and Responses to Second Set of Document Requests of Defendant West Coast Facilities, Inc.

11.    Attached hereto as Exhibit "G" is a true and correct copy of Plaintiff Intelsat's Objections and Responses to Third Set of Document Requests of Defendant West Coast Facilities, Inc.

12.    Attached hereto as Exhibit "H" is a true and correct copy of the Notice of Deposition of Plaintiff Intelsat USA Sales Corporation Pursuant to F.R.Civ.P. Sec. 30(b)(6) by West Coast Facilities, Inc.

13.    Attached hereto as Exhibit "I" is a true and correct copy of Plaintiff Intelsat's Objections and Responses to Notice of 30(b)(6) Deposition of Plaintiff by Defendant West Coast Facilities, Inc.

14.    Attached hereto as Exhibit "J" is a true and correct copy of Notice of 30(b)(6) Deposition of Defendant West Coast Facilities, Inc.


I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on August 1, 2008.

Ira P. Rothken, Esq.,
Attorney for Defendant West Coast
Facilities Inc.

3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone:  (415) 924-4250
Facsimile:    (415) 924-2905

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1, 2008, a copy of the

foregoing document was served upon the following by electronic mail and eFiling:

David I. Bledsoe, Esq.
300 North Washington Street, Suite 708
Alexandria, VA  22314
Tel: (703) 379-9424
Fax: (703) 684-1851
bledsoelaw@earthlink.net

_____
Jared R. Smith (CA Bar # 130343)
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone:  (415) 924-4250
Facsimile:   (415) 924-2905

EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION,<br>A Delaware Corporation,<br><br>3400 International Drive<br>Washington DC 20008<br><br><br>Plaintiff,<br><br>v.<br><br>WEST COAST FACILITIES INC.,<br>formerly known as Penthouse Media<br>Group (CA) Inc.<br>6800 Broken Sound Parkway NW<br>Suite 100<br>Boca Raton, FL 33487<br><br><br>Defendant.<br><br>Serve:<br>Corporation Service Company<br>1201 Hays Street<br>Tallahassee FL 32301-2525<br>Registered Agent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CA No

Case: 1:07-cv-01443
Assigned To : Collyer, Rosemary M.
Assign. Date : 8/9/2007
Description: Contract

## COMPLAINT

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant West Coast Facilities Inc., formerly known as Penthouse Media Group (CA)

Inc. ("Penthouse"), and pleads as follows:

1.    Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.    Defendant Penthouse is a California corporation with its principal place of business in the State of Florida.

3.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4.    Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia, and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 13.

5.    On December 28, 2005, Intelsat USA and Penthouse entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Penthouse with certain telecommunications services commencing October 21, 2007 and ending August 1, 2018. Penthouse agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services.

6.    On April 13, 2007, Penthouse wrongfully and without cause repudiated the Agreement.

7.    Plaintiff was and is ready, willing and able to provide telecommunications services to defendant pursuant to the NSA and the Service Contracts, and to perform all its obligations under the NSA and the Service Contracts. Plaintiff has been damaged as a result of Penthouse's wrongful repudiation of the NSA and Service Contracts.

8.    Penthouse's anticipatory breach of the NSA and the Service Contracts entitles plaintiff to recover all damages flowing from the breach, including the present

value of its damages from Penthouse's breach of the total NSA and all Service Contracts between plaintiff and defendant.

## COUNT ONE

### (Anticipatory Breach of Contract)

9.    Plaintiff incorporates the allegations of paragraphs 1 through 8 above.

10.    Defendant has anticipatorily breached the terms of the NSA and the Service Contracts by its wrongful repudiation of the NSA and Service Contracts.

11.    Plaintiff has been damaged as a result of defendant's breaches.

## COUNT TWO

### (Quantum Meruit/Unjust Enrichment)

12.    Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

13.    Plaintiff has conferred benefits on defendant by reserving telecommunications services for defendant's use.

14.    Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

15.    It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

16.    Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.

WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant West Coast Facilities, Inc. in the amount of $7,377,244.77, or an

amount proven at trial, together with interest, its costs herein, and its attorneys' fees, and

such other relief as to the Court seems proper.

                                        INTELSAT USA SALES CORPORATION
                                        By Counsel


<u>        /s/        </u>
David I. Bledsoe
Bar No 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

James English                    626 769 6123              p.1

Contract Number: 04332-006
Customer Number:  36708

**EXECUTION DOCUMENT**

**NON-EXCLUSIVE SERVICE AGREEMENT ("Agreement") DATED THIS** 28th **DAY OF** December **2005  (the "Effective Date") for the supply of Services BY AND BETWEEN**

**INTELSAT USA SALES CORP.** ("Intelsat"), a company incorporated under the laws of the State of Delaware with offices at 3400 International Drive, N.W., Washington, D.C. 20008; AND **PENTHOUSE MEDIA GROUP (CA) INC.**, a company incorporated under the laws of the State of California with offices at 2709 Media Center Drive, Building 1, Los Angeles, CA 90065 (the "Customer").  Intelsat and the Customer shall each be referred to herein individually as a "Party" and collectively as the "Parties".

**THE PARTIES HEREBY AGREE AS FOLLOWS:**

**1.    TERM**

This Agreement shall start on the Effective Date and last for five years and continue thereafter until terminated by either Party giving the other Party 90 days' written notice, but this Agreement shall not in any event terminate or expire until the expiration or termination of any Service Contract governed by this Agreement.

**2.    THE SERVICES**

2.1  The Customer may purchase services from Intelsat during the Term.  Intelsat may, at its sole discretion and without giving any reason, refuse to accept any such request for services.  If Intelsat agrees, the Parties shall enter into a binding Service Contract under this Agreement for the supply of the service ("Service"), which shall specify the terms for the provision of the Service and take precedence over this Agreement. The terms of this Agreement shall apply to any Service Contracts for the duration of such Service Contracts (even if such exceeds the Term).

2.2  The   services   Intelsat   offers   are   at https://ibn.intelsat.com/service_contracts (Service Descriptions and Addenda).  Intelsat may from time to time amend or withdraw any Service Descriptions, Restoration Policy, Technical Guidelines and Operating Procedures or other guidelines, procedures and policies generally applicable to its customers, always provided that any such amendment or withdrawal shall not apply to existing Services.

2.3  All services are offered on a non-exclusive basis for the Customer's own use, or for use as a component of another product for its own use, or sale to its own customers. The Customer may not otherwise distribute or resell any Services without the express written agreement of Intelsat.  Notwithstanding the foregoing provisions of this Section 2.3, the Customer may provide programming and carriage services to other persons and entities, provided that the Customer shall be responsible to Intelsat for such programming pursuant to this Agreement as if it were the Customer's own.

2.4  The Customer shall be responsible, at its own expense, for interconnection with the Services at the Service Demarcation Points (SDP) specified in a Service Contract.  Intelsat shall have no liability for Services beyond these points.

2.5  The Customer may renew or extend a Service of 6 months or longer by giving Intelsat notice that it wishes to do so at least 90 days before the Service end date set out in the Service Contract ("SED"), subject to reaching agreement based on good faith negotiations on price and terms within 30 days of such Customer notice, provided that, as long as the Customer remains engaged in good faith negotiations for the renewal or extension of such Service, Intelsat will not remarket the Satellite capacity used for that Service unless the Customer does not undertake or resume good faith negotiations within 5 days after notice from Intelsat that Intelsat intends to remarket the Satellite capacity.  Intelsat will otherwise be free to remarket the Satellite capacity used for that Service.

2.6  If the Customer continues to use a Service past its SED, Intelsat may, at its sole option, cease to supply the Service, or continue to supply it at either the rate charged in the Service Contract or the then-current market rate.

**3.    CHARGES AND PAYMENT**

3.1  "Charges" means all charges specified in a Service Contract or otherwise due to Intelsat pursuant to this Agreement.  Recurring Charges shall be paid monthly for each month of Service by the last day of the month in which that Service has been supplied.  The Customer shall pay all Charges in US$ within 30 days of the date of the invoice.    Any payment not received by its due date will be subject to interest at a rate of 12% per year.  All payments shall be made in full free and clear of any set-off, restriction, condition or deduction.  Payments shall only be deemed received when they reach the following account: Intelsat USA Sales Corp., Citibank FSB, Washington, D.C., ABA # 254070116, Account number 15096572.

3.2  Unless the Customer notifies Intelsat of any dispute within 45 days of the date of an invoice, the invoice shall be considered final and undisputed.  The Customer shall pay all undisputed amounts by the relevant payment-due date.

3.3  Intelsat may require the Customer to provide it with financial security for any Service not exceeding an amount equal to three months' of fees for such Service ("Collateral") prior to Intelsat's agreement to provide such Service as security for payment of Charges and other liabilities.  The Customer shall still be responsible for the timely payment of Charges.  Intelsat shall be entitled to call upon any Collateral for any late payment or other liabilities that the Customer may incur, and the Customer shall be obliged to replenish the Collateral.  Failure to do so will be a material breach of this Agreement.  Intelsat will return any remaining Collateral to the Customer immediately after the termination of the Service Contract covering the Service once all stated liabilities pursuant to this Agreement and concerning the Service Order to which such Service relates have been paid.

3.4  The Customer shall pay any and all taxes and imposts of any nature whatsoever levied on any Service, save for taxes imposed upon or measured by Intelsat's income.  If any taxes are required to be withheld from amounts payable to Intelsat, or to the extent Intelsat is required to pay or actually pays any taxes in the first instance and provides written notice to the Customer thereof, any amounts payable to Intelsat by the Customer shall be increased so that Intelsat receives the amount it would have received had no taxes been imposed.

3.5  Intelsat represents and warrants that all fees to be paid for receipt of the Services hereunder have been disclosed fully to the Customer, and that there are no additional "hidden" or other charges or fees inherent in such Services (i.e., costs or expenses to be borne by the Customer other than those specified in the applicable Service Contract or this Agreement), including without limitation any fees correlating to Satellite position maintenance.

**4.    SERVICE LEVELS**

4.1  Without limiting Intelsat's other obligations pursuant to this Agreement, Intelsat will use commercially reasonable efforts to provide each Service as set out in its Service Contract, and in any

Confidential and Proprietary
US Version 001-10 February 2005

- 1 -

Intelsat USA Sales Corp.

James English                    62G 769 6123                    p.2

Contract Number: 04322-000
Customer Number: 36708

event provide all Services with appropriate skill and expertise meeting or exceeding then-prevailing industry standards.

4.2  If a "Service Interruption" (that is a Customer-reported outage to a Service which lasts for more than 60 minutes from the time it is reported to Intelsat) occurs, following verification by Intelsat using all reasonable and good faith efforts to do so, Intelsat shall give the Customer a credit against future Charges for that Service calculated as a pro-rata proportion of the recurring monthly Charge for that Service (an "Interruption Credit"), or if the Service does or will terminate prior to the consumption of the Interruption Credit, then a cash refund of the unused balance of the Interruption Credit.

4.3  Intelsat shall not be liable for any failure to supply any Service and in no event shall Interruption Credits be given in respect of any Service Interruption that is caused by the Customer or its default or by events beyond Intelsat's reasonable control.

5.    SUSPENSION AND TERMINATION FOR DEFAULT

5.1  Intelsat may, at its option, terminate this Agreement (including all Service Contracts) or a Service Contract by notice if the Customer (i) fails to make any payment due to Intelsat within 5 days of receiving notice that such payment is late and that Intelsat intends to terminate such Service Agreement; or (ii) is otherwise in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from Intelsat.

5.2  Provided that the Customer is not in material breach of any of its obligations under this Agreement, the Customer may (i) terminate this Agreement (including all Service Contracts) or a Service Contract by notice if Intelsat is in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from the Customer; or (ii) terminate a Service Contract by notice if Intelsat fails to meet the relevant Service minimum performance criteria in the Intelsat Technical Guidelines and Operating Procedures applicable for the subject Service for a period greater than 7 consecutive calendar days following Intelsat's receipt of notice of such failure, whether or not such failure is due to a Force Majeure Event (as defined in Section 8.1).

5.3  Either Party may terminate this Agreement by notice if the other Party files a petition in bankruptcy not withdrawn within 30 days of its filing or is adjudicated bankrupt or insolvent, or files or has filed against it any petition or answer seeking any reorganisation, composition, liquidation or similar relief for itself under any applicable statute, law or regulation or makes any general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

5.4  Intelsat may terminate this Agreement if a change in the ownership or corporate holding of the Customer results in Intelsat being in violation of any US or foreign law, regulation or order of a competent authority.

5.5  Upon termination by Intelsat, or expiration, of this Agreement (or the relevant Service Contract) for whatever reason, the Customer shall cease using the Services and the Satellite capacity.  All outstanding indebtedness of the Customer to Intelsat under the Agreement shall become immediately due and payable. Further, for each Service Contract that has been terminated by Intelsat, all amounts due to be paid by the Customer to the end of that Service Contract shall immediately become due and payable. The Parties agree this is a proper assessment of the loss of bargain and damages Intelsat will incur, and is not a penalty.

5.6  Intelsat may suspend Services in whole or in part (i) if necessary to comply with any applicable laws, regulations or government orders; or (ii) if the Customer's signals are being blocked or jammed by a third party; or (iii) if an Earth Station is not in compliance with the Technical Guidelines and Operating Procedures; or (iv) in circumstances where Intelsat is entitled to terminate this Agreement for the Customer's breach; provided that as concerns (i) Intelsat gives the Customer 30 days notice prior to such suspension

(or as many days up to 30 days as applicable laws, regulations or government orders permit), as concerns (ii) and (iii) Intelsat gives the Customer as much prior notice as is reasonably practicable under the circumstances, and as concerns (iv) Intelsat gives prior notice of such suspension to the Customer as if it were a notice of breach given as prescribed in Section 5.1 and the Customer does not cure in the manner prescribed in Section 5.1.  Intelsat acknowledges that the Customer's programming contains adult content, including without limitation full and explicit nudity and frank discussions of sexual and sex-related matters, and that such content shall not in and of itself provide Intelsat a basis to suspend Services, always subject to Section 5 6 (i).

5.7  Intelsat may also suspend temporarily Services by giving the Customer reasonable written notice in order to perform testing, maintenance or adjustment works.  Intelsat diligently shall seek to coordinate the timing of such action with the Customer in order to minimise any interruption to Services, and shall use reasonable efforts to minimise any such suspensions.  Intelsat shall use reasonable efforts to avoid scheduling testing, maintenance or adjustment works between the hours of Friday 6:00 p.m and Monday 6:00 a.m. Eastern Time.  In "Urgent Operational Cases" (that is, situations that in the reasonable opinion of Intelsat based on the information then available have caused or are likely to cause: (i) damage to the Satellites or related infrastructure of Intelsat or a third party or (ii) major and sustained interference with other services) Intelsat may suspend Services without prior notice, but shall give notice to the Customer as promptly as reasonably practicable thereafter with an explanation for the reason(s) for suspension and a timetable (updated from time to time as and if such timetable changes) for Service restoration.

6.    LIMITATION OF LIABILITY

6.1  INTELSAT WARRANTS IT WILL PROVIDE THE SERVICES WITH APPROPRIATE SKILL.  ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, OTHER THAN THOSE EXPRESSLY INCLUDED IN THIS AGREEEMENT ARE DISCLAIMED BY THE PARTIES.

6.2  WITH THE EXCEPTION OF CLAIMS (i) FOR DEATH OR PERSONAL INJURY DUE TO INTELSAT'S (OR ITS AGENTS') NEGLIGENCE, AND (ii) ARISING FROM INTELSAT'S (OR ITS AGENTS') GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, FOR WHICH THERE IS NO LIMITATION IMPOSED, IT IS EXPRESSLY AGREED THAT INTELSAT'S SOLE OBLIGATION AND THE CUSTOMER'S EXCLUSIVE REMEDY FOR ANY DIRECT LOSS WHATSOEVER ARISING OUT OF OR RELATING TO THIS AGREEMENT IS INTERRUPTION CREDITS, AND THE CUSTOMER AGREES THAT THESE ARE A GENUINE PRE-ASSESSMENT OF LOSS AND DAMAGE.

6.3  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER ARISING OUT OF OR UNDER THIS AGREEMENT WHETHER UNDER CONTRACT, WARRANTY, TORT OR OTHERWISE, INCLUDING LOSS OF REVENUE OR PROFITS, REGARDLESS OF THE FORESEEABILITY OF SUCH DAMAGES.

6.4  THE CUSTOMER SHALL INCLUDE IN DISTRIBUTION AGREEMENTS WITH DOWNSTREAM VENDORS OF CUSTOMER PRODUCTS CARRIED VIA SERVICES PROVIDED BY INTELSAT PURSUANT TO THIS AGREEMENT DISCLAIMERS OF LIABILITY IN FAVOUR OF INTELSAT AND ITS AFFILIATES SUBSTANTIALLY SIMILAR TO (BUT IN NO CASE LESS BROAD THAN) THOSE SET FORTH IN THIS SECTION.

7.    INDEMNIFICATION

7.1  The Customer shall be liable for and shall indemnify and hold harmless Intelsat (including any affiliate, or director, officer, employee or agent of Intelsat or its affiliates) from and against any direct or

Confidential and Proprietary
US Version 001-10 February 2005

2

Intelsat USA Sales Corp.

Contract Number:   04322-000
Customer Number:   36708

indirect loss, damage, liability or expense arising from any claim by a third party that is not an affiliate of Intelsat in connection with the provision of Services and arising out of or in connection with: (i) the fault or negligence or breach of this Agreement by the Customer, or (ii) the Customer's breach of any national laws, rules and regulations applicable to it; or (iii) the Customer's or any third party end-user's use of the Services, regardless of cause by the Customer, its affiliates or customers, including any claims relating to the information or content of programming or other material displayed or transmitted; but excluding the "Intelsat Indemnified Matters" (defined in Section 7.3)

7.2  The Customer also shall be liable for and shall indemnify and hold harmless Intelsat from and against any loss or damage to Intelsat's Satellites or related Intelsat provided infrastructure and facilities that is caused by any act or omission of the Customer not directed, recommended or specified by Intelsat or its agents.

7.3  Intelsat shall be liable for and shall indemnify and hold harmless the Customer (including any affiliate, or director, officer, employee or agent of the Customer or its affiliates) from and against any direct or indirect loss, damage, liability or expense arising from any claim by a third party that is not an affiliate of the Customer in connection with: (i) the fault or negligence or breach (or its representative), or the breach of this Agreement by Intelsat; or (ii) Intelsat's breach of any national laws, rules and regulations applicable to it; or (iii) Intelsat's gross negligence or wilful misconduct; or (iv) intellectual property rights infringement or violation arising from provision, receipt or use of the Services as provided by Intelsat (collectively, the "Intelsat Indemnified Matters"), but excluding such claims to the extent arising due to the Customer's failure to perform its obligations set forth in Section 6.4.

8.  FORCE MAJEURE

8.1  Neither Party shall be liable for any failure to perform under this Agreement due to any unforeseeable act, event or cause beyond its reasonable control ("Force Majeure Event") during the duration of the Force Majeure Event; provided that the party whose performance is so afflicted gives notice of such Force Majeure Event describing the circumstances and date occurrence of such Force Majeure Event, and its best estimate of the expected duration based on the information known (if any).  Subject to Section 5.2, upon removal or cessation of the Force Majeure Event, all obligations under this Agreement shall resume.

8.2  [Intentionally omitted.]

8.3  [Intentionally omitted.]

9.  WARRANTIES

9.1  The Customer warrants that: (i) it will only use and will procure that its customers only use the Services and/or display or transmit any information or content using or in connection with the Services in compliance at all times with all applicable laws and regulations; and (ii) it will follow established practices and procedures for frequency co-ordination and will not knowingly use the Services in a manner that could reasonably be expected to interfere with or cause physical harm to the Satellites or other services that Intelsat offers.  These Warranties shall apply throughout the Term and until the SED of the last remaining Service Contract.

9.2  Each Party represents and warrants to the other Party that as of the date of this Agreement (i) it has the right, power and authority to enter into and fully perform its obligations hereunder (ii) the execution, delivery and performance of this Agreement have been duly authorised by all necessary corporate action; (iii) this Agreement constitutes legal, valid and binding obligations on that Party; (iv) it has obtained or will obtain prior to the commencement of the Services requiring them all applicable clearances and licences, consents and approvals necessary to enable it to provide (as to

Intelsat) and use (as to the Customer) the Services and to perform its other obligations under this Agreement.

9.3 .  Each Party represents and warrants to the other Party that it is in compliance with all applicable laws and regulations of any jurisdiction to which it is subject concerning the subject matter of this Agreement and/or one or more Service Contracts, and performance of its obligations under this Agreement and the Service Contracts will not violate or conflict with any applicable laws or regulations of any jurisdiction to which it is subject.

10.  CONFIDENTIALITY

10.1  Intelsat and the Customer agree that it may be necessary to the performance of this Agreement for a Party (the 'Disclosing Party') to disclose to the other Party (the "Receiving Party") Confidential Information (that is, information of a confidential or proprietary nature relating to this Agreement or a Disclosing Party, its affiliates or other representatives that is reduced to writing and marked "Confidential" or similarly, not including information (i) developed independently, or lawfully received from a third party not owing a duty or obligation of confidentiality to the Disclosing Party, or (ii) to have reached the public domain other than by a breach of this Agreement or other duty or obligation of confidentiality owed to the Disclosing Party.  The Receiving Party shall use the same or higher standard of care to maintain the security and confidentiality of all Confidential Information received from the disclosing Party as the receiving Party uses in the maintenance of the security and confidentiality of its own Confidential Information, and in any event no less than reasonable care.  The Receiving Party shall not, without the written consent of the other, disclose the Disclosing Party's Confidential Information to any non-employee unless such third party is made aware of the confidentiality obligations of this Agreement and either agrees to be bound by them or owes an obligation or duty of confidentiality to the Receiving Party.  The Receiving Party's disclosure of the Disclosing Party's Confidential Information as required by law or other governmental authority shall not constitute a breach of this Agreement provided that the Receiving Party (i) gives prompt notice of such requirement to the Disclosing Party, (ii) cooperates with the Disclosing Party at the Disclosing Party's request and expense to protect such Confidential Information from unauthorized use and disclosure, and (iii)  does not in any event disclose more of the Disclosing Party's Confidential Information than is required pursuant such law or governmental authority.

Upon termination or expiration of this Agreement, each Party shall destroy and irretrievable delete all of the Disclosing Party's Confidential Information and confirm in writing to the Disclosing Party that it has done so.

10.2  Each Party may state that the Customer is a customer of Intelsat and may publish this Agreement and the Parties' contact details as it sees fit.

11.  TECHNICAL

11.1  The Customer shall make reasonable best efforts to ensure that all Earth Stations comply with the Intelsat Technical Guidelines and Operating Procedures published as of the Effective Date and promptly shall remedy any non-compliance; provided that Intelsat shall provide technical information and guidance as reasonably requested by the Customer and required to effect the Customer's remedy.

11.2  Always subject to Section 4.1, Intelsat may at any time after the method by which it provides a Service, replace the Satellite on which Service is provided and/or manage Satellite Capacity during the term of a Service Contract, and always provided this does not result in a greater than operationally insignificant degradation in any Service below the provisions of the Intelsat Technical Guidelines and Operating Procedures applicable to the Services.  The Customer agrees to operate on either sense of polarisation and across an entire frequency band or bands.  Intelsat will provide reasonable

James English                    626 789 6123              p.4

written notice to the Customer concerning any Service to be replaced, relocated or reconfigured with information on the alternative assignment. Intelsat will provide the equivalent performance on any replacement Satellite in terms of power and bandwidth to continue the Service. Customers are encouraged to change modulation schemes to improve their efficient use of Satellite capacity.

11.3 In cases of Satellite failure or malfunction, Intelsat shall restore affected Services as far as reasonably possible in accordance with the Restoration Policy in effect as of the Effective Date of this Agreement and posted at https://ibn.intelsat.com/service_contracts.

**12. NOTICES**

12.1 All notices under this Agreement shall be made in writing, by e-mail, fax or courier, and shall be deemed to be received upon delivery to the other Party at the above address marked as follows:

| If to Intelsat: | If to the Customer: |
|---|---|
| Intelsat USA Sales Corp. | Penthouse Media Group (CA) Inc. |
| 3400 International Drive, N.W. | |
| Washington, D.C. 20008 | 2709 Media Center Drive |
| Telephone: (202) 944-7299 | Building 1 |
| Fax: (202) 944-8120 | Los Angeles, CA 90065 |
| e-mail: | Telephone: ▪ |
| uscontractnotices@intelsat.com | Fax: ▪ |
| Attention: Director, Contracts | e-mail: jenglish@pmgi.com. |
| | Attention: Jim English |
| | with copy (which copy shall not constitute notice) to: |
| | Penthouse Media Group (CA) Inc. |
| | 6800 Broken Sound Parkway NW, Suite 100 |
| | Boca Raton, FL 33487 |
| | Telephone: (561) 912-7630 |
| | Fax: (561) 912-1747 |
| | e-mail: lbressler@pmgi.com |
| | Attention: General Counsel |

12.2 Each Party from time to time may change its notice coordinates by giving notice to the other Party.

**13. JURISDICTION**

This Agreement shall be governed and interpreted in all respects by the laws of the State of New York and both Parties irrevocably agree that the United States District Court for the District of Columbia shall have jurisdiction to settle any dispute arising out of or in connection with this Agreement, save that Intelsat shall also have the right to take proceedings against the Customer in the national courts of the jurisdiction of the Customer's incorporation. Nothing contained in this Section shall limit any rights either Party may have to seek immediate injunctive relief against the other Party.

**14. ASSIGNMENT**

14.1 Neither Party may assign, transfer or sublease (subject to Section 2.3) any rights or obligations under this Agreement to any other person or entity without the express written consent of the other

Party; provided that each Party may assign or otherwise transfer this Agreement to its affiliates or to a successor in interest to substantially all of its assets. Intelsat acknowledges that Services it provides pursuant to this Agreement are intended for the benefit of the Customer and its affiliates. The Customer acknowledges that its affiliates receiving Services pursuant to this Agreement shall be bound by the terms of this Agreement.

**15. MISCELLANEOUS**

15.1 (i) This Agreement may only be amended by written agreement of the Parties. (ii) If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity and enforceability of any other provision of this Agreement, and the invalid or unenforceable provision shall, if possible, be replaced with or rewritten into a provision consistent with the intentions of the Parties. (iii) [Intentionally omitted.] (iv) No waiver by either Party of any default by the other Party shall affect or impair either Party's rights in respect of any subsequent default of any kind by the other Party. Acceptance by Intelsat of any payments by the Customer shall not be deemed a waiver of any preceding breach by the Customer of any of the terms or conditions of this Agreement. No waiver shall be effective unless made in writing by a Party's authorised representative. (v) The rights, powers and remedies provided in this Agreement are cumulative and may be exercised singularly or cumulatively. (vi) This Agreement is intended for the sole benefit of the Parties and no third party (including, without limitation, customers of the Customer) may seek to enforce or benefit from this Agreement. (vii) The relationship created by this Agreement is that of independent contractors, and is in no way a partnership, principal-agent or other such relationship and the Customer warrants it will not hold itself out as entitled to bind Intelsat in any way whatsoever. (viii) This Agreement may be executed in counterparts and by facsimile, each of which shall be deemed as original, and all of which, when taken together, shall constitute one and the same instrument.

15.2 The headings in this Agreement are for convenience only and shall not affect the interpretation of this Agreement. The language of this Agreement and all other communications between the Parties regarding the performance of this Agreement shall be English. Any period of time referred to in this Agreement shall be calculated in Greenwich Mean Time. The following terms shall have the following meanings:

Earth Station means any antennas, switching facilities and related equipment owned or operated by the Customer that form an interconnection point with a Service.

including means including without limitation, whether capitalised or not.

Satellite means an object, located or intended to be located beyond the earth's atmosphere, that is or will be used for radio communications owned or operated by Intelsat or an affiliate;

16.3 This Agreement (including Addenda 1 and 2, the relevant Service Descriptions, and each Service Contract into which the Parties enter, all of which are incorporated into this Agreement by reference) constitutes the entire agreement of the Parties concerning this Agreement's subject matter and supersedes all prior correspondence, representations, proposals, negotiations, understandings, and of the Parties, oral or written, with respect to such subject matter.

15.4 The following provisions of this Agreement shall survive its expiration or termination. Sections 5.5, 6, 7, 10 (but only for three (3) years following such expiration or termination), and Sections 12-15 inclusive.

Intelsat USA Sales Corp.

4/5

James English                    625 769 6123                    p.5

Contract Number:  04322-000
Customer Number    36705

IN WITNESS WHEREOF, each of the Parties has caused a duly authorized representative to execute and deliver this Agreement.

INTELSAT USA SALES CORP.                    PENTHOUSE MEDIA GROUP (CA) INC.

Signed by: _____               Signed by: _____

Print name: PAUL KONDET                     Print name: JAMES L. English

Title: DIRECTOR USA SALES MGMT.             Title: Vice President

Date: December 2__, 2005                     Date: December 17, 2005

Confidential and Proprietary
US Version 001-10 February 2005

5

Intelsat USA Sales Corp.

James English                    626 788 8123                    p.6



Inspiring connections

## Intelsat Americas Service Order Contract
### for
### Penthouse Media Group Inc.

### EXECUTION DOCUMENT

**Service ID No:** 1-316X6                    **Date Issued:** 23 December 2006

The Service ID No will be added following customer signature of this Service Order

**Intelsat Service Order:**

The terms of this Service Order are valid for 5 days from its issue date, and are subject to capacity availability at the time of order. By signing and returning this Service Order to Intelsat USA Sales Corp. ("Intelsat"), the Customer is making an offer to purchase the service described in this Service Order (the "Service") from Intelsat. When accepted agreed and signed by Intelsat, this Service Order shall become a binding Service Contract under which the Customer purchases the Service from Intelsat.

The Service is subject to the terms and conditions of that certain Non-Exclusive Service Agreement, dated as of December 27, 2005 by and between Intelsat and the Customer, as may be amended (the "Non-Exclusive Service Agreement"), except as expressly supplemented or amended in this Service Contract.

### Section 1: Commercial Terms:

| | |
|---|---|
| Customer Name | Penthouse Media Group Inc. |
| Type of service order | ☒ New Service    ☐ Change to an existing service  ☐ Renewal |
| Service Parameters | Orb. Location/Satellite | 121°W / IA-13 |
| | Priority | Inter-Satellite Protected (see Section 2.1) |
| | Bandwidth | 18 MHz |
| | Transponder/Band | C16/C-Band |
| Service charges | $72,090 per month, beginning as of the Service Commencement Date |
| Collateral amount | $216,000 (equivalent to 3 months' service charges), which shall be invoiced by Intelsat and due to be paid to Intelsat no later than the Service Commencement Date |
| Billing cycle | Concurrent |
| Service Commencement Date ("SCD") | 01 October 2007 12:00 a.m. |
| Service End Date | 01 August 2018 11:59 p.m. |

### Section 2: Additional Terms and Conditions:

2.1 For purposes of this Service Order, the Non-Exclusive Service Agreement Service Description: Intelsat Americas Full Time Lease Services shall be amended as follows:

Intelsat USA Sales Corp.
3400 International Drive, NW
Washington, DC 20008
USA

Page 1 of 3

2.1.1  Section 1 APPLICABILITY shall be supplemented with the following:

The terms and conditions in this Service Description shall also apply to Inter-Satellite Protected Services for Leases on IA Satellites.

2.1.2  Section 2.1 Definitions shall be supplemented with the following:

Inter-Satellite Protected Service shall mean a Lease Service that in the event of failure shall be restored on another Intelsat satellite pursuant to Section 4.3 herein, except where the failure is caused by the actions or inactions of the Customer not pursuant to the directions of Intelsat. Inter-Satellite Protected Services are not preemptible.

2.1.3  Section 4.3 shall be added as follows:

4.3 Service Restoration for Inter-Satellite Protected Services

In the event any Inter-Satellite Protected Service provided fails, then Intelsat shall restore such Service on comparable Satellite Capacity on IA-7 or another "cable friendly" Intelsat Satellite then in orbit as agreed by the parties at the time. Such Satellite Capacity will become the Inter-Satellite Protected Service as of the moment of its implementation.

2.2    Unless earlier terminated by the parties in writing or in accordance with the Service Agreement, the term of this Service Order shall be binding immediately as of its full execution and shall end on the Service End Date. The Service shall commence on the Service Commencement Date.

2.3    If, within 60 days of the date of full execution of this Service Contract, the Customer does not reach an agreement with an uplink provider, the Customer may at its option revise its Service Commencement Date to 01 June 2008 in transponder C09 of IA-13. In such event, all other parameters of the Service as described herein would remain unchanged. Additionally, Intelsat agrees to work with the Customer and negotiate in good faith as is reasonable and as is consistent with Intelsat's applicable Service Descriptions, Technical Guidelines and Operating Procedures and Restoration Policy in the event that the Customer's arrangement with an uplink provider requires revisions to this Service Order.

The Customer acknowledges that all of the information contained in this Service Order is proprietary and confidential to Intelsat.

Customer signature:                                Intelsat signature: _Paul K____

Customer Signature

Name: _Jainest Eglel_               Name: _PAUL KONORT_

Title: _Vice President_             Title: _DIRECTOR, USA SALES MGMT._

Date: _12/27/05_                    Date: _28 DECEMBER 2005_

# Intelsat Americas 13
# Performance Parameters for
# Penthouse Media Group Inc.

### Parameters

| Capacity Block Size | 18 MHz (i.e., one-half of a 36 MHz transponder) |
|---|---|
| Proposed Transponder Assignment | IA-13 / C16 |
| Transponder Connectivity & Coverage | CONUS |
| Transponder Center Frequency (up/down) | To be provided no later than 45 days prior to SCD* |
| Transponder Bandwidth (nominal) | 36 MHz |
| Uplink Polarization | Horizontal |
| Downlink Polarization | Vertical |
| Satellite Saturation Flux Density (BBP) | -96.0 dBW/m² with 0 PAD |

### Capacity Minimum Standards

| Transponder Backoff (input/output) | 6.0 / 3.5 dB |
|---|---|
| Customer Aggregate Output Back-Off | 5.0 dB |
| Power Equivalent Bandwidth | 18 MHz |
| Allocated Bandwidth | 18 MHz |
| Adjacent Satellite Isolation (2-way) | To be provided no later than 45 days prior to SCD* |
| Co-Channel Isolation (2-way) | To be provided no later than 45 days prior to SCD* |
| Intermodulation Level | To be provided no later than 45 days prior to SCD* |

*Subject to prior approval by Intelsat of Customer's Transmission Plan filing

### Notes:

For all carriers used within this block of capacity, Penthouse Media Group Inc. must file for a Transmission Plan with Intelsat at least three (3) days prior to service activation.

The Transmission Plan filing must include sufficient data to perform link calculations, such as information rate, modulation type, threshold Eb/No values, and link availability for each carrier. Intelsat will within three (3) business days of receipt of such data give notice to Penthouse Media Group Inc. of any further data that Intelsat requires.

The Transmission Plan formally issued by Intelsat includes a Carrier ID number for each carrier to be used within this capacity block. Customers will not be permitted to access the satellite without valid Carrier IDs.

Specific transponders and blocks of frequency described above are subject to availability and can be changed by Intelsat, subject to the terms and conditions of the Non-exclusive Service Agreement entered by Intelsat and Penthouse Media Group Inc.

Stated transponder backoffs for single and multi-carrier operation are standard values. In special cases, more optimum values can be selected according to customer needs, conditional upon the requirements of other satellite traffic.

Intelsat shall maintain the satellite providing the Service at 121° W ±0.05 degrees throughout the term of the Service. Intelsat acknowledges that any failure by the Customer to perform its obligations under this Service Contract or the Non-exclusive Service Agreement due to Intelsat's failure or inability to so maintain the satellite shall not constitute a breach by the Customer of this Service Contract or the Non-exclusive Service Agreement.

Intelsat USA Sales Corp.
3400 International Drive, NW
Washington, DC 20008
USA

Page 3 of 3

CO-386-online
10/03

# United States District Court
# For the District of Columbia

INTELSAT USA SALES CORPORATION )
                               )
                               )
                    Plaintiff       )
          vs                      )    Civil
WEST COAST FACILITIES INC. (formerly known as   )
PENTHOUSE MEDIA GROUP (CA) INC.)         )
                               )
                    Defendant   )

Case: 1:07-cv-01443
Assigned To : Collyer, Rosemary M.
Assign. Date : 8/9/2007
Description: Contract

### CERTIFICATE RULE LCvR 7.1

I, the undersigned, counsel of record for **Plaintiff** certify that to the best of my knowledge and

belief, the following are parent companies, subsidiaries or affiliates of **INTELSAT USA SALES CORPORATION** which have

any outstanding securities in the hands of the public:

Intelsat, Ltd., Intelsat (Bermuda), Ltd., Intelsat Intermediate Holding Company., Ltd.; INtelsat
Subsidiary Holding Company, LTd.; and Intelsat Corporation

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

_____
Signature

**422596**
_____
BAR IDENTIFICATION NO.

**DAVID I. BLEDSOE**
Print Name

**300 N. Washington St., Suite 708**
Address

**ALEXANDRIA VA 22314**
City          State         Zip Code

**703-379-9424**
Phone Number

EXHIBIT  B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INTELSAT USA SALES CORPORATION, | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. 07-1443 (RMC) |
| WEST COAST FACILITIES INC., | ) JURY TRIAL REQUESTED |
| Defendant | ) |

### ANSWER AND AFFIRMATIVE DEFENSES

Defendant West Coast Facilities Inc. ("Defendant" or "West Coast"), by and through its

attorneys, herein responds to the Complaint filed by Plaintiff Intelsat USA Sales Corporation

("Plaintiff" or "Intelsat").

Any allegation not expressly admitted is denied. West Coast states as follows:

1.      Plaintiff Intelsat USA Corporation ("Intelsat USA") is a Delaware corporation
with its principal place of business in the District of Columbia.

**ANSWER NO. 1:**      West Coast is without knowledge of the truth or falsity of the

allegations in paragraph 1, and they are therefore denied.

2.      Defendant Penthouse is a California corporation with its principal place of
business in the State of Florida.

**ANSWER NO. 2:**      West Coast admits that it is a California corporation, but avers that

it no longer does business in any state.

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §
1332, as there is diversity of citizenship between the parties and the amount in controversy
exceeds $75,000.

**ANSWER NO. 3:**     West Coast admits that this Court has subject matter jurisdiction

over Plaintiff's claims pursuant to 28 U.S.C. § 1332.   West Coast denies the remaining

allegations of paragraph 3.

4.     Jurisdiction and venue in this Court is proper, as defendant has breached its
contract with plaintiff in the District of Columbia, and defendant has also irrevocably consented
to the jurisdiction of this court.  Exhibit 1, ¶ 13.

**ANSWER NO. 4:**     West Coast admits that jurisdiction and venue in this Court are

proper.  West Coast denies the remaining allegations of paragraph 4.

5.     On December 28, 2005, Intelsat USA and Penthouse entered into a Nonexclusive
Service Agreement ("NSA").  A copy of the NSA is attached hereto as Exhibit 1.  Under the
terms of the NSA, Intelsat USA agreed to provide Penthouse with certain telecommunications
services commencing October 21, 2007 and ending August 1, 2018.  Penthouse agreed to pay
Intelsat USA's charges and fees for such services as described in the Service Contracts made part
of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services.

**ANSWER NO. 5:**     West Coast admits that it entered into an agreement with Intelsat

USA on or around December 28, 2005, but avers that the agreement speaks for itself.  West

Coast denies the remaining allegations of paragraph 5.

6.     On April 13, 2007, Penthouse wrongfully and without cause repudiated the
Agreement.

**ANSWER NO. 6:**     West Coast admits that it sent a letter to Plaintiff on or around

April 13, 2007, but avers that the letter speaks for itself.  West Coast denies the remaining

allegations of paragraph 6.

7.     Plaintiff was and is ready, willing and able to provide telecommunications
services to defendant pursuant to the NSA and the Service Contracts, and to perform all its
obligations under the NSA and the Service Contracts.  Plaintiff has been damaged as a result of
Penthouse's wrongful repudiation of the NSA and Service Contracts.

**ANSWER NO. 7:**     West Coast is without knowledge of the extent to which Plaintiff

was or is "ready, willing and able to provide telecommunications services to defendant pursuant

to the NSA and the Service Contracts, and to perform all its obligations under the NSA and the

2

Service Contracts," and therefore denies those allegations. West Coast denies the remaining allegations of Paragraph 7.

8.      Penthouse's anticipatory breach of the NSA and the Service Contracts entitles plaintiff to recover all damages flowing from the breach, including the present value of its damages from Penthouse's breach of the total NSA and all Service Contracts between plaintiff and defendant.

**ANSWER NO. 8:**   Denied.

## COUNT ONE
### (Anticipatory Breach of Contract)

9.      Plaintiff incorporates the allegations of paragraphs 1 through 8 above.

**ANSWER NO. 9:**   West Coast hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

10.     Defendant has anticipatorily breached the terms of the NSA and the Service Contracts by its wrongful repudiation of the NSA and Service Contracts.

**ANSWER NO. 10:**   Denied.

11.     Plaintiff has been damaged as a result of defendant's breaches.

**ANSWER NO. 11:**   Denied.

## COUNT TWO
### (Quantum Meruit/Unjust Enrichment)

12.     Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

**ANSWER NO. 12:**   West Coast hereby incorporates by reference, as though fully set forth herein, the previous responses to the allegations in the preceding paragraphs of this Complaint.

13.     Plaintiff has conferred benefits on defendant by reserving telecommunications services for defendant's use.

**ANSWER NO. 13:**   Denied.

3

14.    Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

**ANSWER NO. 14:**   Denied.

15.    It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

**ANSWER NO. 15:**   Denied.

16.    Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.

**ANSWER NO. 16:**   Denied.

## ANSWER TO PRAYER FOR RELIEF

West Coast denies that Plaintiff is entitled to any of the relief it seeks.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Complaint is barred because it fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's Complaint is barred because Plaintiff failed to mitigate its damages.

### Third Affirmative Defense

Plaintiff's Complaint is barred by reason of Plaintiff's unclean hands.

### Fourth Affirmative Defense

Plaintiff's Complaint is barred by estoppel.

### Fifth Affirmative Defense

Plaintiff's Complaint is barred by waiver.

4

### Sixth Affirmative Defense

Plaintiff's Complaint is barred because the contract is unconscionable.

### Seventh Affirmative Defense

Plaintiff's Complaint is barred because the contract is void for violating public policy.

### Eighth Affirmative Defense

Plaintiff's Complaint is barred because the contract is void for frustration of purpose and

impracticability.

### Ninth Affirmative Defense

Plaintiff's Complaint is barred because the contract is void for mutual mistake.

## PRAYER FOR RELIEF

WHEREFORE, Defendant West Coast Facilities Inc. respectfully requests that the Court

enter judgment in its favor against Intelsat USA Sales Corporation and that it grant West Coast

the following relief:

(a)     All costs and attorney's fees incurred by West Coast;

(b)     Such other relief as the Court deems appropriate.

West Coast hereby demands a jury trial on all issues and claims so triable.

Dated: September 21, 2007                    Respectfully submitted,

                                             /s/ Brendan J. McMurrer

                                             Brendan J. McMurrer (DC Bar # 493424)
                                             SIDLEY AUSTIN LLP
                                             1501 K Street, N.W.
                                             Washington, D.C. 20005
                                             Phone: (202) 736-8000
                                             Fax:    (202) 736-8711
                                             Email:  bmcmurrer@sidley.com

EXHIBIT  C

James English          626 769 6123          p.1

Contract Number: 04322-000
Customer Number: 36708

**EXECUTION DOCUMENT**

**NON-EXCLUSIVE SERVICE AGREEMENT ("Agreement") DATED THIS 28th DAY OF December 2005** (the "Effective Date") for the supply of Services BY AND BETWEEN

**INTELSAT USA SALES CORP.** ("Intelsat"), a company incorporated under the laws of the State of Delaware with offices at 3400 International Drive, N.W., Washington, D.C. 20008; AND **PENTHOUSE MEDIA GROUP (CA) INC.**, a company incorporated under the laws of the State of California with offices at 2709 Media Center Drive, Building 1, Los Angeles, CA 90065 (the "Customer"). Intelsat and the Customer shall each be referred to herein individually as a "Party" and collectively as the "Parties".

**THE PARTIES HEREBY AGREE AS FOLLOWS:**

**1.   TERM**

This Agreement shall start on the Effective Date and last for five years and continue thereafter until terminated by either Party giving the other Party 90 days' written notice, but this Agreement shall not in any event terminate or expire until the expiration or termination of any Service Contract governed by this Agreement.

**2.   THE SERVICES**

2.1  The Customer may purchase services from Intelsat during the Term. Intelsat may, at its sole discretion and without giving any reason, refuse to accept any such request for services. If Intelsat agrees, the Parties shall enter into a binding Service Contract under this Agreement for the supply of the service ("Service"), which shall specify the terms for the provision of the Service and take precedence over this Agreement. The terms of this Agreement shall apply to any Service Contracts for the duration of such Service Contracts (even if such exceeds the Term).

2.2  The services Intelsat offers are at https://ibn.intelsat.com/service_contracts (Service Descriptions and Addenda). Intelsat may from time to time amend or withdraw any Service Descriptions, Restoration Policy, Technical Guidelines and Operating Procedures or other guidelines, procedures and policies generally applicable to its customers, always provided that any such amendment or withdrawal shall not apply to existing Services.

2.3  All services are offered on a non-exclusive basis for the Customer's own use or use as a component of another product for its own use, or sale to its own customers. The Customer may not otherwise distribute or resell any Services without the express written agreement of Intelsat. Notwithstanding the foregoing provisions of this Section 2.3, the Customer may provide programming and carriage services to other persons and entities, provided that the Customer shall be responsible to Intelsat for such programming pursuant to this Agreement as if it were the Customer's own.

2.4  The Customer shall be responsible, at its own expense, for interconnection with the Services at the Service Demarcation Points (SDP) specified in a Service Contract. Intelsat shall have no liability for Services beyond these points.

2.5  The Customer may renew or extend a Service of 6 months or longer by giving Intelsat notice that it wishes to do so at least 90 days before the Service end date set out in the Service Contract ("SED"), subject to reaching agreement based on good faith negotiations on price and terms within 30 days of such Customer notice, provided that, as long as the Customer remains engaged in good faith negotiations for the renewal or extension of such Service, Intelsat will not remarket the Satellite capacity used for that Service unless the Customer does not undertake or resume good faith negotiations within 5 days after notice from Intelsat that Intelsat intends to remarket the Satellite capacity. Intelsat will otherwise be free to remarket the Satellite capacity used for that Service.

2.6  If the Customer continues to use a Service past its SED, Intelsat may, at its sole option, cease to supply the Service, or continue to supply it at either the rate charged in the Service Contract or the then-current market rate.

**3.   CHARGES AND PAYMENT**

3.1  "Charges" means all charges specified in a Service Contract or otherwise due to Intelsat pursuant to this Agreement. Recurring Charges shall be paid monthly for each month of Service by the last day of the month in which that Service has been supplied. The Customer shall pay all Charges in US$ within 30 days of the date of the invoice.  Any payment not received by its due date will be subject to interest at a rate of 12% per year.  All payments shall be made in full free and clear of any set-off, restriction, condition or deduction.  Payments shall only be deemed received when they reach the following account:  Intelsat USA Sales Corp., Citibank FSB, Washington, D.C., ABA # 254070116, Account number 15096572.

3.2  Unless the Customer notifies Intelsat of any dispute within 45 days of the date of an invoice, the invoice shall be considered final and undisputed. The Customer shall pay all undisputed amounts by the relevant payment-due date.

3.3  Intelsat may require the Customer to provide it with financial security for any Service not exceeding an amount equal to three months' of fees for such Service ("Collateral") prior to Intelsat's agreement to provide such Service as security for payment of Charges and other liabilities. The Customer shall still be responsible for the timely payment of Charges.  Intelsat shall be entitled to call upon any Collateral for any late payment or other liabilities that the Customer may incur, and the Customer shall be obliged to replenish the Collateral.  Failure to do so will be a material breach of this Agreement.  Intelsat will return any remaining Collateral to the Customer immediately after the termination of the Service Contract covering the Service once all stated liabilities pursuant to this Agreement and concerning the Service Order to which such Service relates have been paid.

3.4  The Customer shall pay any and all taxes and imposts of any nature whatsoever levied on any Service, save for taxes imposed upon or measured by Intelsat's income. If any taxes are required to be withheld from amounts payable to Intelsat, or to the extent Intelsat is required to pay or actually pays any taxes in the first instance and provides written notice to the Customer thereof, any amounts payable to Intelsat by the Customer shall be increased so that Intelsat receives the amount it would have received had no taxes been imposed.

3.5  Intelsat represents and warrants that all fees to be paid for receipt of the Services hereunder have been disclosed fully to the Customer, and that there are no additional "hidden" or other charges or fees inherent in such Services (i.e., costs or expenses to be borne by the Customer other than those specified in the applicable Service Contract or this Agreement), including without limitation any fees correlating to Satellite position maintenance.

**4.   SERVICE LEVELS**

4.1  Without limiting Intelsat's other obligations pursuant to this Agreement, Intelsat will use commercially reasonable efforts to provide each Service as set out in its Service Contract, and in any

James English                                    62C 769 6123                    p.2

Contract Number: 04322-000
Customer Number: 36708

event provide all Services with appropriate skill and expertise meeting or exceeding then-prevailing industry standards.

4.2  If a "Service Interruption" (that is a Customer-reported outage to a Service which lasts for more than 60 minutes from the time it is reported to Intelsat) occurs, following verification by Intelsat using all reasonable and good faith efforts to do so, Intelsat shall give the Customer a credit against future Charges for that Service calculated as a pro-rata proportion of the recurring monthly Charge for that Service (an "Interruption Credit"), or if the Service does or will terminate prior to the consumption of the Interruption Credit, then a cash refund of the unused balance of the Interruption Credit.

4.3  Intelsat shall not be liable for any failure to supply any Service and in no event shall Interruption Credits be given in respect of any Service Interruption that is caused by the Customer or its default or by events beyond Intelsat's reasonable control.

5.    SUSPENSION AND TERMINATION FOR DEFAULT

5.1  Intelsat may, at its option, terminate this Agreement (including all Service Contracts) or a Service Contract by notice if the Customer (i) fails to make any payment due to Intelsat within 5 days of receiving notice that such payment is late and that Intelsat intends to terminate such Service Agreement; or (ii) is otherwise in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from Intelsat.

5.2  Provided that the Customer is not in material breach of any of its obligations under this Agreement, the Customer may (i) terminate this Agreement (including all Service Contracts) or a Service Contract by notice if Intelsat is in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from the Customer; or (ii) terminate a Service Contract by notice if Intelsat fails to meet the relevant Service minimum performance criteria in the Intelsat Technical Guidelines and Operating Procedures applicable for the subject Service for a period greater than 7 consecutive calendar days following Intelsat's receipt of notice of such failure, whether or not such failure is due to a Force Majeure Event (as defined in Section 8.1).

5.3  Either Party may terminate this Agreement by notice if the other Party files a petition in bankruptcy not withdrawn within 30 days of its filing or is adjudicated bankrupt or insolvent, or files or has filed against it any petition or answer seeking any reorganisation, composition, liquidation or similar relief for itself under any applicable statute, law or regulation or makes any general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

5.4  Intelsat may terminate this Agreement if a change in the ownership or corporate holding of the Customer results in Intelsat being in violation of any US or foreign law, regulation or order of a competent authority.

5.5  Upon termination by Intelsat, or expiration, of this Agreement (or the relevant Service Contract) for whatever reason, the Customer shall cease using the Services and the Satellite capacity. All outstanding indebtedness of the Customer to Intelsat under the Agreement shall become immediately due and payable. Further, for each Service Contract that has been terminated by Intelsat, all amounts due to be paid by the Customer to the end of that Service Contract shall immediately become due and payable. The Parties agree this is a proper assessment of the loss of bargain and damages Intelsat will incur, and is not a penalty.

5.6  Intelsat may suspend Services in whole or in part (i) if necessary to comply with any applicable laws, regulations or government orders; or (ii) if the Customer's signals are being blocked or jammed by a third party; or (iii) if an Earth Station is not in compliance with the Technical Guidelines and Operating Procedures; or (iv) in circumstances where Intelsat is entitled to terminate this Agreement for the Customer's breach; provided that as concerns (i) Intelsat gives the Customer 30 days notice prior to such suspension

(or as many days up to 30 days as applicable laws, regulations or government orders permit), as concerns (ii) and (iii) Intelsat gives the Customer as much prior notice as is reasonably practicable under the circumstances, and as concerns (iv) Intelsat gives prior notice of such suspension to the Customer as if it were a notice of breach given as prescribed in Section 5.1 and the Customer does not cure in the manner prescribed in Section 5.1. Intelsat acknowledges that the Customer's programming contains adult content, including without limitation full and explicit nudity and frank discussions of sexual and sex-related matters, and that such content shall not in and of itself provide Intelsat a basis to suspend Services, always subject to Section 6.6 (i).

5.7  Intelsat may also suspend temporarily Services by giving the Customer reasonable written notice in order to perform testing, maintenance or adjustment works. Intelsat diligently shall seek to coordinate the timing of such action with the Customer in order to minimise any interruption to Services, and shall use reasonable efforts to minimise any such suspensions. Intelsat shall use reasonable efforts to avoid scheduling testing, maintenance or adjustment works between the hours of Friday 6:00 p.m and Monday 6:00 a.m. Eastern Time. In "Urgent Operational Cases" (that is, situations that in the reasonable opinion of Intelsat based on the information then available have caused or are likely to cause: (i) damage to the Satellites or related infrastructure of Intelsat or a third party or (ii) major and sustained interference with other services) Intelsat may suspend Services without prior notice, but shall give notice to the Customer as promptly as reasonably practicable thereafter with an explanation for the reason(s) for suspension and a timetable (updated from time to time as and if such timetable changes) for Service restoration.

6.    LIMITATION OF LIABILITY

6.1  INTELSAT WARRANTS IT WILL PROVIDE THE SERVICES WITH APPROPRIATE SKILL.  ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, OTHER THAN THOSE EXPRESSLY INCLUDED IN THIS AGREEEMENT ARE DISCLAIMED BY THE PARTIES.

6.2  WITH THE EXCEPTION OF CLAIMS (i) FOR DEATH OR PERSONAL INJURY DUE TO INTELSAT'S (OR ITS AGENTS') NEGLIGENCE, AND (ii) ARISING FROM INTELSAT'S (OR ITS AGENTS') GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, FOR WHICH THERE IS NO LIMITATION IMPOSED, IT IS EXPRESSLY AGREED THAT INTELSAT'S SOLE OBLIGATION AND THE CUSTOMER'S EXCLUSIVE REMEDY FOR ANY DIRECT LOSS WHATSOEVER ARISING OUT OF OR RELATING TO THIS AGREEMENT IS INTERRUPTION CREDITS, AND THE CUSTOMER AGREES THAT THESE ARE A GENUINE PRE-ASSESSMENT OF LOSS AND DAMAGE.

6.3  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER ARISING OUT OF OR UNDER THIS AGREEMENT WHETHER UNDER CONTRACT, WARRANTY, TORT OR OTHERWISE, INCLUDING LOSS OF REVENUE OR PROFITS, REGARDLESS OF THE FORESEEABILITY OF SUCH DAMAGES.

6.4  THE CUSTOMER SHALL INCLUDE IN DISTRIBUTION AGREEMENTS WITH DOWNSTREAM VENDORS OF CUSTOMER PRODUCTS CARRIED VIA SERVICES PROVIDED BY INTELSAT PURSUANT TO THIS AGREEMENT DISCLAIMERS OF LIABILITY IN FAVOUR OF INTELSAT AND ITS AFFILIATES SUBSTANTIALLY SIMILAR TO (BUT IN NO CASE LESS BROAD THAN) THOSE SET FORTH IN THIS SECTION.

7.    INDEMNIFICATION

7.1  The Customer shall be liable for and shall indemnify and hold harmless Intelsat (including any affiliate, or director, officer, employee or agent of Intelsat or its affiliates) from and against any direct or

Confidential and Proprietary
US Version 001-10 February 2005

2

Intelsat USA Sales Corp.

Contract Number: 04322-000
Customer Number: 36708

indirect loss, damage, liability or expense arising from any claim by a third party that is not an affiliate of Intelsat in connection with the provision of Services and arising out of or in connection with: (i) the fault or negligence or breach of this Agreement by the Customer, or (ii) the Customer's breach of any national laws, rules and regulations applicable to it; or (iii) the Customer's or any third party end-user's use of the Services, regardless of cause by the Customer, its affiliates or customers, including any claims relating to the information or content of programming or other material displayed or transmitted; but excluding the "Intelsat Indemnified Matters" (defined in Section 7.3)

7.2 The Customer also shall be liable for and shall indemnify and hold harmless Intelsat from and against any loss or damage to Intelsat's Satellites or related Intelsat provided infrastructure and facilities that is caused by any act or omission of the Customer not directed, recommended or specified by Intelsat or its agents.

7.3 Intelsat shall be liable for and shall indemnify and hold harmless the Customer (including any affiliate, or director, officer, employee or agent of the Customer or its affiliates) from and against any direct or indirect loss, damage, liability or expense arising from any claim by a third party that is not an affiliate of the Customer in connection with: (i) the fault or negligence or Intelsat (or its representative), or the breach of this Agreement by Intelsat; or (ii) Intelsat's breach of any national laws, rules and regulations applicable to it; or (iii) Intelsat's gross negligence or wilful misconduct; or (iv) intellectual property rights infringement or violation arising from provision, receipt or use of the Services as provided by Intelsat (collectively, the "Intelsat Indemnified Matters"), but excluding such claims to the extent arising due to the Customer's failure to perform its obligations set forth in Section 6.4.

**8. FORCE MAJEURE**

8.1 Neither Party shall be liable for any failure to perform under this Agreement due to any unforeseeable act, event or cause beyond its reasonable control ("Force Majeure Event") during the duration of the Force Majeure Event; provided that the party whose performance is so afflicted gives notice of such Force Majeure Event describing the circumstances and date occurrence of such Force Majeure Event, and its best estimate of the expected duration based on the information known (if any). Subject to Section 5.2, upon removal or cessation of the Force Majeure Event, all obligations under this Agreement shall resume.

8.2 [Intentionally omitted.]

8.3 [Intentionally omitted.]

**9. WARRANTIES**

9.1 The Customer warrants that: (i) it will only use and will procure that its customers only use the Services and/or display or transmit any information or content using or in connection with the Services in compliance at all times with all applicable laws and regulations; and (ii) it will follow established practices and procedures for frequency co-ordination and will not knowingly use the Services in a manner that could reasonably be expected to interfere with or cause physical harm to the Satellites or other services that Intelsat offers. These Warranties shall apply throughout the Term and until the SED of the last remaining Service Contract.

9.2 Each Party represents and warrants to the other Party that as of the date of this Agreement (i) it has the right, power and authority to enter into and fully perform its obligations hereunder (ii) the execution, delivery and performance of this Agreement have been duly authorised by all necessary corporate action; (iii) this Agreement constitutes legal, valid and binding obligations on that Party; (iv) it has obtained or will obtain prior to the commencement of the Services requiring them all applicable clearances and licences, consents and approvals necessary to enable it to provide (as to

Intelsat) and use (as to the Customer) the Services and to perform its other obligations under this Agreement.

9.3 . Each Party represents and warrants to the other Party that it is in compliance with all applicable laws and regulations of any jurisdiction to which it is subject concerning the subject matter of this Agreement and/or one or more Service Contracts, and performance of its obligations under this Agreement and the Service Contracts will not violate or conflict with any applicable laws or regulations of any jurisdiction to which it is subject.

**10. CONFIDENTIALITY**

10.1 Intelsat and the Customer agree that it may be necessary to the performance of this Agreement for a Party (the 'Disclosing Party') to disclose to the other Party (the "Receiving Party") Confidential Information (that is, information of a confidential or proprietary nature relating to this Agreement or a Disclosing Party, its affiliates or other representatives that is reduced to writing and marked "Confidential" or similarly, not including information (i) developed independently, or lawfully received from a third party not owing a duty or obligation of confidentiality to the Disclosing Party, or (ii) to have reached the public domain other than by a breach of this Agreement or other duty or obligation of confidentiality owed to the Disclosing Party. The Receiving Party shall use the same or higher standard of care to maintain the security and confidentiality of all Confidential Information received from the disclosing Party as the receiving Party uses in the maintenance of the security and confidentiality of its own Confidential Information, and in any event no less than reasonable care. The Receiving Party shall not, without the written consent of the other, disclose the Disclosing Party's Confidential Information to any non-employee unless such third party is made aware of the confidentiality obligations of this Agreement and either agrees to be bound by them or owes an obligation or duty of confidentiality to the Receiving Party. The Receiving Party's disclosure of the Disclosing Party's Confidential Information as required by law or other governmental authority shall not constitute a breach of this Agreement provided that the Receiving Party (i) gives prompt notice of such requirement to the Disclosing Party, (ii) cooperates with the Disclosing Party at the Disclosing Party's request and expense to protect such Confidential Information from unauthorized use and disclosure, and (iii) does not in any event disclose more of the Disclosing Party's Confidential Information than is required pursuant such law or governmental authority.

Upon termination or expiration of this Agreement, each Party shall destroy and irretrievable delete all of the Disclosing Party's Confidential Information and confirm in writing to the Disclosing Party that it has done so.

10.2 Each Party may state that the Customer is a customer of Intelsat and may publish this Agreement and the Parties' contact details as it sees fit.

**11. TECHNICAL**

11.1 The Customer shall make reasonable best efforts to ensure that all Earth Stations comply with the Intelsat Technical Guidelines and Operating Procedures published as of the Effective Date and promptly shall remedy any non-compliance; provided that Intelsat shall provide technical information and guidance as reasonably requested by the Customer and required to effect the Customer's remedy.

11.2 Always subject to Section 4.1, Intelsat may at any time alter the method by which it provides a Service, replace the Satellite on which Service is provided and/or manage Satellite Capacity during the term of a Service Contract, and always provided this does not result in a greater than operationally insignificant degradation in any Service below the provisions of the Intelsat Technical Guidelines and Operating Procedures applicable to the Services. The Customer agrees to operate on either sense of polarisation and across an entire frequency band or bands. Intelsat will provide reasonable

James English                    626 789 6123              p.4

Contract Number: 04322-000
Customer Number: 38708

written notice to the Customer concerning any Service to be replaced, relocated or reconfigured with information on the alternative assignment. Intelsat will provide the equivalent performance on any replacement Satellite in terms of power and bandwidth to continue the Service. Customers are encouraged to change modulation schemes to improve their efficient use of Satellite capacity.

11.3 In cases of Satellite failure or malfunction, Intelsat shall restore affected Services as far as reasonably possible in accordance with the Restoration Policy in effect as of the Effective Date of this Agreement and posted at https://ibn.intelsat.com/service_contracts.

## 12.  NOTICES

12.1 All notices under this Agreement shall be made in writing, by e-mail, fax or courier, and shall be deemed to be received upon delivery to the other Party at the above address marked as follows:

| If to Intelsat: | If to the Customer: |
|---|---|
| Intelsat USA Sales Corp. | Penthouse Media Group (CA) Inc. |
| 3400 International Drive, N.W. | |
| Washington, D.C. 20008 | 2709 Media Center Drive |
| | Building 1 |
| Telephone: (202) 944-7299 | Los Angeles, CA 90065 |
| Fax: (202) 944-8120 | Telephone: • |
| e-mail: | Fax: • |
| uscontractnotices@intelsat.com | e-mail: jenglish@pmgi.com. |
| Attention: Director, Contracts | Attention: Jim English |
| | with copy (which copy shall not constitute notice) to: |
| | Penthouse Media Group (CA) Inc. |
| | 6800 Broken Sound Parkway NW, Suite 100 |
| | Boca Raton, FL 33487 |
| | Telephone: (561) 912-7630 |
| | Fax: (561) 912-1747 |
| | e-mail: ibressler@pmgi.com |
| | Attention: General Counsel |

12.2 Each Party from time to time may change its notice coordinates by giving notice to the other Party.

## 13.  JURISDICTION

This Agreement shall be governed and interpreted in all respects by the laws of the State of New York and both Parties irrevocably agree that the United States District Court for the District of Columbia shall have jurisdiction to settle any dispute arising out of or in connection with this Agreement, save that Intelsat shall also have the right to take proceedings against the Customer in the national courts of the jurisdiction of the Customer's incorporation. Nothing contained in this Section shall limit any rights either Party may have to seek immediate injunctive relief against the other Party.

## 14.  ASSIGNMENT

14.1 Neither Party may assign, transfer or sublease (subject to Section 2.3) any rights or obligations under this Agreement to any other person or entity without the express written consent of the other

Party; provided that each Party may assign or otherwise transfer this Agreement to its affiliates or to a successor in interest to substantially all of its assets. Intelsat acknowledges that Services it provides pursuant to this Agreement are intended for the benefit of the Customer and its affiliates. The Customer acknowledges that its affiliates receiving Services pursuant to this Agreement shall be bound by the terms of this Agreement.

## 15.  MISCELLANEOUS

15.1 (i) This Agreement may only be amended by written agreement of the Parties. (ii) If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity and enforceability of any other provision of this Agreement, and the invalid or unenforceable provision shall, if possible, be replaced with or rewritten into a provision consistent with the intentions of the Parties. (iii) [intentionally omitted.] (iv) No waiver by either Party of any default by the other Party shall affect or impair either Party's rights in respect of any subsequent default of any kind by the other Party. Acceptance by Intelsat of any payments by the Customer shall not be deemed a waiver of any preceding breach by the Customer of any of the terms or conditions of this Agreement. No waiver shall be effective unless made in writing by a Party's authorised representative. (v) The rights, powers and remedies provided in this Agreement are cumulative and may be exercised singularly or cumulatively. (vi) This Agreement is intended for the sole benefit of the Parties and no third party (including, without limitation, customers of the Customer) may seek to enforce or benefit from this Agreement. (vii) The relationship created by this Agreement is that of independent contractors, and is in no way a partnership, principal-agent or other such relationship and the Customer warrants it will not hold itself out as entitled to bind Intelsat in any way whatsoever. (viii) This Agreement may be executed in counterparts, and by facsimile, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument.

15.2 The headings in this Agreement are for convenience only and shall not affect the interpretation of this Agreement. The language of this Agreement and all other communications between the Parties regarding the performance of this Agreement shall be English. Any period of time referred to in this Agreement shall be calculated in Greenwich Mean Time. The following terms shall have the following meanings:

Earth Station means any antennas, switching facilities and related equipment owned or operated by the Customer that form an interconnection point with a Service.

including means including without limitation, whether capitalised or not.

Satellite means an object, located or intended to be located beyond the earth's atmosphere, that is or will be used for radio communications owned or operated by Intelsat or an affiliate;

16.3 This Agreement (including Addenda 1 and 2, the relevant Service Descriptions, and each Service Contract into which the Parties enter, all of which are incorporated into this Agreement by reference) constitutes the entire agreement of the Parties concerning this Agreement's subject matter and supersedes all prior correspondence, representations, proposals, negotiations, understandings, and representations of the Parties, oral or written, with respect to such subject matter.

15.4 The following provisions of this Agreement shall survive its expiration or termination. Sections 5.5, 6, 7, 10 (but only for three (3) years following such expiration or termination), and Sections 12-15 inclusive.

Intelsat USA Sales Corp.


4/5

James English                    62S 769 6123                    p.5

Contract Number:  04322-000
Customer Number    36703

IN WITNESS WHEREOF, each of the Parties has caused a duly authorized representative to execute and deliver this Agreement.

INTELSAT USA SALES CORP.

Signed by: _____

Print name: PAUL KONDET

Title: DIRECTOR USA SALES MGMT.

Date: December 28, 2005

PENTHOUSE MEDIA GROUP (CA) INC.

Signed by: _____

Print name: JAMES L. English

Title: Vice President

Date: December 27, 2005

Intelsat USA Sales Corp.

EXHIBIT  D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

INTELSAT USA SALES CORPORATION,  )
)
     Plaintiff,  )
)
     v.  )   Civil Action No. 07-1443 (RMC)
)
WEST COAST FACILITIES INC.,  )
)
     Defendant.  )
)

## PLAINTIFFS' CERTIFICATE OF FILING DISCLOSURES

Plaintiffs Intelsat USA Sales Corporation  by and through its undersigned attorneys,

certify that, in compliance with FRCP Rule 26(A)(1) and this Court's Rule 16(B) Scheduling

Order, the Preliminary Disclosures, along with a copy of this Certificate, were served on

defendant's counsel by email and by first class mail postage prepaid on November 7, 2007.


      /s/
David I. Bledsoe
VSB 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTELSAT USA SALES CORPORATION,    )
                                   )
          Plaintiff,               )
                                   )
          v.                       )    Civil Action No. 07-1443 (RMC)
                                   )
WEST COAST FACILITIES INC.,        )
                                   )
          Defendant.               )
                                   )

## PLAINTIFFS' PRELIMINARY DISCLOSURES

Plaintiffs Intelsat USA Sales Corporation, by and through its undersigned attorneys,

pursuant to the Court's order and in compliance with Rule 26(a)(1) of the Federal Rules of Civil

Procedure, submit the following preliminary pretrial disclosures.


1.       Individuals likely to have discoverable information.

Bill Haffejee
Intelsat, Ltd.
Wellesley House North, 2nd Floor
90 Pitts Bay Road
Pembroke HM 08, Bermuda


Mr. Haffejee has knowledge of the contractual amounts owed by Defendant and
Intelsat's damages herein.


Kurt Riegelman
Intelsat
3400 International Drive, NW
Washington DC 20008

Mr. Riegleman has knowledge concerning the negotiation of the contract between the parties, Intelsat's reservation of capacity, and Defendant's anticipatory breach.


Steve Cadden
Intelsat
3400 International Drive, NW
Washington DC 20008

Mr. Cadden has knowledge concerning contract negotiations and communications between Intelsat and Defendant and Defendant's anticipatory breach.

All of these individuals are represented, and contact should be through undersigned counsel.


2.    Relevant documents and things.

      a.    Contracts and agreements between plaintiff and defendant.  These documents are accessible at Intelsat's DC offices.


      b.    Email communications and correspondence between the parties, including Termination Notices.   These documents are accessible at Intelsat's DC offices.

3.      Damages.

The damages in this matter fluctuate over time as interest accrues.  The contract value for the entire contract term breached by defendant in this matter is $9,360,000.00.  The net present value of that value at the time of filing the complaint was $5,577,244.77.  In addition, from the execution of the agreement. Intelsat reserved the bandwidth spectrum required by defendant in the contract for 22 months prior to the time called for performance, and was unable to lease that capacity.  The value of that 22 months' capacity is $1,584,000.00. Finally, a deposit of $216,000 is required by the contract.

_____/s/_____
David I. Bledsoe
Bar No. 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

EXHIBIT  E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>WEST COAST FACILITIES INC., )<br><br>Defendant. ) | Civil Action No. 07-1443 (RMC) |

## PLAINTIFF INTELSAT'S OBJECTIONS AND RESPONSES TO FIRST SET OF DOCUMENT REQUESTS OF DEFENDANT WEST COAST FACILITIES, INC.

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves the following

Objections and Responses to Defendant West Coast Facilities, Inc.'s First Set of Document

Requests.

## GENERAL OBJECTIONS

1.     Intelsat objects to any request, instruction, or definition to the extent that it seeks

material protected from disclosure under the work product doctrine or privileged from

disclosure under the attorney-client privilege, or subject to any other applicable

protection or privilege.

2.     Intelsat objects to any request, instruction or definition to the extent that it

purports to place upon Intelsat obligations in excess of those required under the Federal

Rules of Civil Procedure.

3.      Intelsat objects to any request, instruction or definition that seeks information applicable to a time period or events that occurred outside of the relevant period.

4.      Intelsat objects to any request, instruction or definition that seeks information already in the possession of defendant.

5.      Intelsat objects to any request, instruction or definition that seeks proproiertaty, financial or confidential information.  To the extent that such requests are reasonably calculated to lead to the discovery of admissible evidence, responsive documents will be provided pursuant to the protective order entered in this case.


## REQUESTS FOR PRODUCTION

1.      All documents concerning the allegations in the Complaint.


OBJECTION:

Intelsat incorporates its general objections herein.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.


2.      All documents referred to in Intelsat's initial disclosures.


OBJECTION:

Intelsat incorporates its general objections herein.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.

3.     All documents concerning the contracts at issue in this matter, including, but not limited to, all drafts of the contracts.

OBJECTION:

Intelsat incorporates its general objections herein.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.

4.     All documents concerning communications between West Coast and Intelsat.

OBJECTION:

Intelsat incorporates its general objections herein.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.

5.     All documents concerning Intelsat's discussions and deliberations regarding West Coast.

OBJECTION:

Intelsat incorporates its general objections herein.  Intelsat specifically objects to this request as seeking material and documents prepared in anticipation of litigation and protected from disclosure under the work product doctrine.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.

6.    All documents concerning offers by Intelsat to reduce the amount required to be paid under the contracts at issue in this matter.


OBJECTION:

Intelsat incorporates its general objections herein. Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon.


7.    All documents concerning inquiries by persons other than West Coast to utilize the satellite service described in the contracts at issue in this matter or its functional equivalent.


OBJECTION:

Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential. Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon and pursuant to the protective order entered in this case.


8.    All documents concerning Intelsat's efforts to lease to persons other than West Coast the satellite service described in the contracts at issue in this matter or its functional equivalent.

OBJECTION:

Intelsat incorporates its general objections herein.  Intelsat specifically objects to this request as not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon and pursuant to the protective order entered in this case.

9.    All documents concerning Intelsat's alleged damages.

OBJECTION:

Intelsat incorporates its general objections herein.  Intelsat specifically objects to this request as seeking documents and information that are proprietary and confidential.  Subject to these objections, responsive documents will be provided at a time and place mutually agreed upon and pursuant to the protective order entered in this case.

INTELSAT USA SALES CORPORATION

By Counsel

_____

David I. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on April 7, 2008, a copy of the foregoing was served by email and US mail upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
 Washington, DC 20005

                                   David Y. Bledsoe
                                   Counsel for Plaintiff
                                   Bar Number 422596
                                   300 North Washington Street
                                   Suite 708
                                   Alexandria, VA  22314
                                   703-379-9424
                                   703-684-1851(fax)
                                   bledsoelaw@earthlink.net

EXHIBIT  F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>WEST COAST FACILITIES INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 07-1443 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF INTELSAT'S OBJECTIONS AND RESPONSES TO SECOND SET OF DOCUMENT REQUESTS OF DEFENDANT WEST COAST FACILITIES, INC.

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves the following Objections and Responses to Defendant West Coast Facilities, Inc.'s Second Set of Document Requests.

## GENERAL OBJECTIONS

1.    Intelsat objects to any request, instruction, or definition to the extent that it seeks material protected from disclosure under the work product doctrine or privileged from disclosure under the attorney-client privilege, or subject to any other applicable protection or privilege.

2.    Intelsat objects to any request, instruction or definition to the extent that it purports to place upon Intelsat obligations in excess of those required under the Federal Rules of Civil Procedure.

3.    Intelsat objects to any request, instruction or definition that seeks information applicable to a time period or events that occurred outside of the relevant period.

4.    Intelsat objects to any request, instruction or definition that seeks information already in the possession of defendant.

5.    Intelsat objects to any request, instruction or definition that seeks proprietary, financial or confidential information.  To the extent that such requests are reasonably calculated to lead to the discovery of admissible evidence, responsive documents will be provided pursuant to the protective order entered in this case.

## REQUESTS FOR PRODUCTION

1.    All documents concerning any allegation that Intelsat was in violation of any law, rule, regulation, treaty, or third party rights regarding any part of the satellite service described in the contracts at issue in this matter or its functional equivalent including, but not limited to, third party patent rights and government regulations.

OBJECTION:  Intelsat incorporates its general objections herein.  Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

2.    All documents concerning any impairment, defects, repairs, or complaints regarding any part of the satellite service described in the contracts at issue in this matter or its functional equivalent.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

3.    All documents concerning any effort by Intelsat or those acting on its behalf to mitigate any alleged damages.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential. Subject to and without waiver of such objections, responsive documents will be provided at a time and place mutually agreed upon.

4.    All documents concerning all rights, including, but not limited to, intellectual property rights and licenses, necessary for Intelsat to provide and fulfill the satellite service described in the contracts at issue in this matter.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

5.    All documents concerning cease and desist letters or their functional equivalent that

relate in whole or in part to the satellite service described in the contracts at issue in this matter or to Intelsat.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

6.    All documents concerning any litigation involving Intelsat that relates to satellite services.

OBJECTION: Intelsat incorporates its general objections herein. Intelsat specifically objects to this request as burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

INTELSAT USA SALES CORPORATION
By Counsel

David I. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2008, a copy of the foregoing was served by email and US mail upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

Ira P. Rothken, Esq.
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949

David I. Bledsoe
Counsel for Plaintiff
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA 22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

EXHIBIT  G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, | ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 07-1443 (RMC) |
| | ) |
| WEST COAST FACILITIES INC., | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**PLAINTIFF INTELSAT'S OBJECTIONS AND RESPONSES TO THIRD SECOND SET
OF DOCUMENT REQUESTS OF DEFENDANT WEST COAST FACILITIES, INC.**

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves the following

Objections and Responses to Defendant West Coast Facilities, Inc.'s Third Set of Document

Requests.

**GENERAL OBJECTIONS**

1.      Intelsat objects to any request, instruction, or definition to the extent that it seeks

material protected from disclosure under the work product doctrine or privileged from disclosure

under the attorney-client privilege, or subject to any other applicable protection or privilege.

2.      Intelsat objects to any request, instruction or definition to the extent that it

purports to place upon Intelsat obligations in excess of those required under the Federal Rules of

Civil Procedure.

3.      Intelsat objects to any request, instruction or definition that seeks information applicable to a time period or events that occurred outside of the relevant period.

4.      Intelsat objects to any request, instruction or definition that seeks information already in the possession of defendant.

5.      Intelsat objects to any request, instruction or definition that seeks proprietary, financial or confidential information.  To the extent that such requests are reasonably calculated to lead to the discovery of admissible evidence, responsive documents will be provided pursuant to the protective order entered in this case.

## REQUESTS FOR PRODUCTION

1.      All documents concerning Plaintiff s transponders and their use, description, ownership, availability, functionality, working condition, occupancy, capacity, coverage, and maintenance beginning one year prior to any written agreement alleged in the Complaint to the present.

OBJECTION:   Intelsat incorporates its general objections herein.   Intelsat specifically objects to this request as overbroad, vague, burdensome, harassing, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, and as seeking documents and information that are proprietary and confidential.

INTELSAT USA SALES CORPORATION

By Counsel

David I. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## **CERTIFICATE OF SERVICE**

I certify that on May 27, 2008, a copy of the foregoing was served by email and US mail

upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
 Washington, DC 20005

Ira P. Rothken, Esq.
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949

David I. Bledsoe
Counsel for Plaintiff
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

EXHIBIT  H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1443 (RMC) |
| | ) |
| WEST COAST FACILITIES INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**NOTICE OF DEPOSITION OF PLAINTIFF INTELSAT USA SALES CORPORATION
PURSUANT TO F.R.Civ.P. Sec. 30(b)(6) BY WEST COAST FACILITIES INC.**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to F.R.Civ.P. Sec. 30(b)(6), defendant West Coast Facilities Inc. ("West Coast"), by and through counsel, will take the deposition of plaintiff Intelsat USA Sales Corporation's ("Intelsat") by the person most knowledgeable on the subjects identified in Exhibit A, on oral examination to be held at the office of SIDLEY AUSTIN LLP, 1501 K Street, N.W. Washington, D.C. 20005, Phone: (202) 736-8000. The deposition will be conducted on July 7, 2008 at 10:00 a.m. local time before an officer qualified to administer oaths under the Federal Rules of Civil Procedure, who is not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested in the action; and will be recorded by stenographic recording, including real time reporting, and may be recorded by audiotape and videotape.

If said deposition is not completed at said date, the taking thereof will continue from day to day thereafter, at the same place, with Sundays and holidays excepted, until completed.

Deponent shall designate and produce a person or persons to testify on behalf of deponent on the topics set forth in Exhibit A, attached hereto.

Dated: June 26, 2008                    ROTHKEN LAW FIRM LLP

_____

Ira P. Rothken, Esq.,
Attorney for Defendant West Coast Facilities Inc.

3 Hamilton Landing, Suite 280
Novato, CA  94949
Telephone:     (415) 924-4250
Facsimile:     (415) 924-2905

Brendan J. McMurrer (DC Bar # 493424)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Phone:  (202) 736-8000
Fax:      (202) 736-8711
Email:   bmcmurrer@sidley.com

## EXHIBIT A

1.    The negotiation, drafting and execution of contracts at issue in this matter and related communications and representations.

2.    The ability or lack thereof of Intelsat to perform the alleged contract with West Coast including but not limited to services availability and capacity and technical ability, continuity, coverage, volume, geography, and operations.

3.    The extent and quantification of IntelStat's alleged damages or monies owed in this case including those allegedly arising out of the contracts at issue in this matter.

4.    Any effort by Intelsat or those acting on its behalf to mitigate any alleged damages or injury or overhead costs and fees.

5.    All rights, including, but not limited to, intellectual property rights and licenses with third parties necessary for Intelsat to provide and fulfill the satellite service described in the contracts at issue in this matter.

6.    Any and all cease and desist letters or their functional equivalent that relate in whole or in part to the satellite services described in the contracts at issue in this matter.

7.    The availability of transponders  for Intelsat to perform under the alleged contract and their use description, ownership, functionality, working condition, occupancy, capacity, coverage, and maintenance.

8.    The locating, retrieving, producing and authentication of documents and information produced by deponent in this case, including (without limitation) deponent's Fed.R.Civ.P. Rule 26 disclosures and documents and information produced in response to written discovery requests in this case.

9.    Plaintiff's relationship, dealings, agreements, disputes and communications with the defendant in this case.

10.    Intelsat's efforts to lease or provide to persons or entities other than West Coast the satellite services or capacity described in the contracts at issue in this matter

or its functional equivalent

11.    Any allegation or communication by third parties that Intelsat was in violation of any law, rule, regulation, treaty, or third party rights regarding any part of the satellite services described in the contracts at issue in this matter or its functional equivalent including, but not limited to, third party patent rights, licenses, and government regulations that would in any manner impact its ability to perform under the alleged contract with West Coast.

12.    Any impairment, defects, repairs, capacity issues, or complaints regarding any part of the satellite services described in the contracts at issue in this matter or its functional equivalent that would impact in any manner the providing of satellite services to West Coast .

13.    Inquiries and related communications with persons or entities other than West Coast to utilize the satellite services described in the contracts at issue in this matter or its functional equivalent including but not limited to entering into agreements to utilize the service capacity allegedly allocated to West Coast.

14.    Any overhead and all other costs and fees incurred by plaintiff related to the contract alleged in the complaint or allegedly providing. allocating, or making available satellite and related services to West Coast.

15.    Any and all agreements with third parties necessary for the providing of services to West Coast under the alleged contract and any and all related costs and fees associated with such agreements.

16.    Any and all factual allegations made in the complaint(s) on file herein and the decision to file such complaint(s).

17.    Any and all work done or performance implemented or burdens incurred if any by plaintiff or those acting on its behalf related to the alleged contract with West Coast or related obligations.

18.    Identification of any and all witnesses and their knowledge of any of the allegations in the complaint(s) on file herein and related facts.

19. Intelsat's compliance or lack thereof with warranties and representations made in the contracts alleged in the complaint(s) on file herein.

20. Any and all complaints by third parties regarding Intelsat's failure to provide satellite services in whole or in part or breach of a satellite services agreement from one year prior to the contract formation alleged in the complaint(s) through the alleged term of such contract(s).

21. Any and all costs and fees actually incurred by Intelsat caused by the alleged breach of West Coast.

22. Any and all content and representations made in marketing and technical information and data provided by Intelsat and/or its agents on the web, in brochures, and elsewhere related to the types of services and agreements alleged in the complaint(s) or contemplated by alleged contract(s).

23. Any and all communications and facts related to any alleged repudiation, breach, and/or termination of the contracts alleged in the complaint(s).

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 27, 2008, a copy of the foregoing document

was served upon the following by electronic mail, facsimile and first-class mail:

> David I. Bledsoe, Esq.
> 300 North Washington Street, Suite 708
> Alexandria, VA 22314
> Tel: (703) 379-9424
> Fax: (703) 684-1851
> bledsoelaw@earthlink.net

> _____
> Jared R. Smith (CA Bar # 130343)
> ROTHKEN LAW FIRM LLP
> 3 Hamilton Landing, Suite 280
> Novato, CA 94949
> Telephone:    (415) 924-4250
> Facsimile:    (415) 924-2905

6

EXHIBIT  I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION,       Plaintiff,<br><br>v.<br><br>WEST COAST FACILITIES INC.,       Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 07-1443 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF INTELSAT'S OBJECTIONS AND RESPONSES TO NOTICE OF 30(b)(6) DEPOSITION OF PLAINTIFF BY DEFENDANT WEST COAST FACILITIES, INC.

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves the following Objections to the Notice of Deposition pursuant to Rule 30(b)(6) of Plaintiff.

## GENERAL OBJECTIONS

1.      Intelsat objects to the Notice and the areas of inquiry to the extent that it seeks material protected from disclosure under the work product doctrine or privileged from disclosure under the attorney-client privilege, or subject to any other applicable protection or privilege.

2.      Intelsat objects to the Notice and the areas of inquiry to the extent that it purports to place upon Intelsat obligations in excess of those required under the Federal Rules of Civil Procedure.

3.      Intelsat objects to the Notice and the areas of inquiry that seek information applicable to a time period or events that occurred outside of the relevant period.

4.      Intelsat objects to the Notice and the areas of inquiry that seek information already in the possession of defendant.

5.      Intelsat objects to the Notice and the areas of inquiry that seek proprietary, financial or confidential information.  To the extent that such requests are reasonably calculated to lead to the discovery of admissible evidence, testimony will be provided pursuant to the protective order entered in this case.

6.      Intelsat objects to the Notice as not providing reasonable notice under the Rules of Civil Procedure, and objects to the date, time and place noted in the Notice.  Intelsat further object to any such deposition proceeding until the completion of all previously noticed depositions in this case.

7.      Intelsat objects to the Notice and areas of inquiry as overbroad, harassing, vague and not reasonably calculated to lead to the discovery of admissible evidence.

## SPECIFIC OBJECTIONS TO AREAS OF INQUIRY

Subject to the general objections above, Intelsat responds to the specific areas of inquiry as follows:

1.   Intelsat will designate a person to testify to the area of inquiry.

2.   Intelsat will designate a person to testify to the area of inquiry.

3.   Intelsat will designate a person to testify to the area of inquiry.

4.   Intelsat will designate a person to testify to the area of inquiry.

5.   Intelsat will designate a person to testify to the area of inquiry.

6.   Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Intelsat will

designate a person to testify to the area of inquiry.

7.  Intelsat objects to the topic as overbroad.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

8.  Intelsat objects to the topic as seeking trial preparation information protected from disclosure under the work product doctrine or privileged from disclosure under the attorney-client privilege.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

9.  Intelsat will designate a person to testify to the area of inquiry.

10.  Intelsat will designate a person to testify to the area of inquiry.

11.  Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

12.  Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

13.  Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

14.  Intelsat objects to the topic as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

15.  Intelsat objects to the topic as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection,

Intelsat will designate a person to testify to the area of inquiry.

16. Intelsat objects to the topic as seeking trial preparation information protected from disclosure under the work product doctrine or privileged from disclosure under the attorney-client privilege. Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

17. Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

18. Intelsat objects to the topic as seeking trial preparation information protected from disclosure under the work product doctrine or privileged from disclosure under the attorney-client privilege. Intelsat further objects to the topic as vague and overbroad.

19. Intelsat objects to the topic as vague and overbroad. Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

20. Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

21. Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, Intelsat will designate a person to testify to the area of inquiry.

22. Intelsat objects to the topic as vague, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

23. Intelsat objects to the topic as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection, Intelsat will

designate a person to testify to the area of inquiry.

INTELSAT USA SALES CORPORATION

By Counsel

David I. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA 22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on July 3, 2008, a copy of the foregoing was served by email and US mail upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

Ira P. Rothken, Esq.
ROTHKEN LAW FIRM LLP
3 Hamilton Landing, Suite 280
Novato, CA 94949

David I. Bledsoe
Counsel for Plaintiff
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA 22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

EXHIBIT  J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WEST COAST FACILITIES INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 07-1443 (RMC) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF 30(B)(6) DEPOSITION OF DEFENDANT
## WEST COAST FACILITIES, INC.

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves this Notice of Deposition of Defendant West Coast Facilities, Inc., pursuant to F.R.Civ.P 30(b)(6), to be held on July 24, 2008 at 801 California Street, Mountain View, CA 94091 at 10 am. This deposition is being taken for the purposes of discovery, for use at trial, and for all other purposes, as permitted under the rules of the Court and all applicable statutes and laws. You are invited to attend and cross-examine.

Defendant must designate one or more officers, directors, managing agents or other person who consents to testify on its behalf on the following matters, and as to which matters each such person will testify:

1.    The negotiation of the contract at issue between Intelsat and defendant.

2.    Defendant's intended use of the services contracted for under the contract with Intelsat;

3.   The corporate structure of defendant, including its relationship with parent and subsidiary companies.

4.   The capitalization of defendant;

5.   The decision to repudiate the contract at issue and reasons for such repudiation.

6.   Corporate officers, directors, and personnel of defendant.

7.   Business conducted by defendant.

8.   Defendant's decision to cease doing business and reasons for such decision.

9.   Any transfer of assets, liabilities, contracts, or monies between defendant and Penthouse Media Group, Inc. since January 2005.

10.   Any financial transaction between defendant and Penthouse Media Group, Inc. since January 2005.


INTELSAT USA SALES CORPORATION
By Counsel


_____
David L. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on July 17, 2008, a copy of the foregoing was served by email and US mail upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
 Washington, DC 20005

David J. Bledsoe
Counsel for Intervenor-Plaintiff Intelsat General
Corporation
Bar Number 29826
300 North Washington Street
Suite 708
Alexandria, VA 22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WEST COAST FACILITIES INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 07-1443 (RMC) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF 30(B)(6) DEPOSITION OF PENTHOUSE MEDIA GROUP, INC.

Plaintiff Intelsat USA Sales Corporation ("Intelsat"), by counsel, serves this Notice of

Deposition of Penthouse Media Group, Inc. ("Penthouse"), pursuant to F.R.Civ.P. 30(b)(6) and

45, to be held on July 25, 2008 at 801 California Street, Mountain View, CA  94091 at 10 am.

This deposition is being taken for the purposes of discovery, for use at trial, and for all other

purposes, as permitted under the rules of the Court and all applicable statutes and laws.  You are

invited to attend and cross-examine.

Penthouse must designate one or more officers, directors, managing agents or other

person who consents to testify on its behalf on the following matters, and as to which matters

each such person will testify:

1.    The corporate structure of Penthouse, including its relationship with West

Coast Facilities, Inc., formerly known as Penthouse Media Group (CA), Inc.

2.    Penthouse's use of satellite services from January 2006 to the present.

3.    Corporate officers, directors, and personnel of Penthouse.

4.      Business conducted by Penthouse involving distribution of content by electronic means, including video on demand, since January 2006, or plans for such business.

5.      Any transfer of assets, liabilities, contracts, or monies between West Coast Facilities, Inc., formerly known as Penthouse Media Group (CA) Inc. and Penthouse Media Group, Inc. since January 2005.

6.      All financial transactions between West Coast Facilities, Inc., formerly known as Penthouse Media Group (CA) Inc., and Penthouse Media Group, Inc. since January 2005.

7.      Penthouse's continuation of any business conducted by West Coast Facilities, Inc.

8.      All contracts between Penthouse with any supplier of or user of satellite services entered into since January 2006.

9.      All use or intended use, whether direct or indirect, by Penthouse, of satellite services, including, without limitation, services relating to:

a.      Video on Demand delivery;
b.      IPTV delivery;
c.      platform channel launch;
d.      New Frontiers;
e.      The Erotic Network (TEN) Canada;
f.      Rogers Cable;
g.      ExpressVu;
h.      Latin American distribution of Penthouse programming or services;
i.      European distribution of Penthouse programming or services;
j.      Astra;
k.      Hot Bird;
l.      BSkyB; or
m.      Asia-Pacific distribution of Penthouse programming or services...

10.    Delivery of programming content for Penthouse content over satellite, Internet

Protocol (IP) Television, public access web based portal, Video On Demand (VOD) platform or

other video streaming content delivery method.

INTELSAT USA SALES CORPORATION
By Counsel


_____
David I. Bledsoe
Counsel for Plaintiff Intelsat USA Sales Corporation
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on July 17, 2008, a copy of the foregoing was served by email and US mail upon:

Brendan J. McMurrer, Esq.
Sidley Austin LLP
1501 K Street, NW
 Washington, DC 20005

David I. Bledsoe
Counsel for Intervenor-Plaintiff Intelsat General
Corporation
Bar Number 29826
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net