# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INTELSAT USA SALES CORPORATION, ) ) ) ) | |
| Plaintiff, ) | Civil Action No. 07-1443 (RMC) |
| ) | |
| v. ) | **Hon. Deborah A. Robinson** |
| ) | |
| WEST COAST FACILITIES INC., ) ) ) | |
| Defendant. ) | |

## REPLY OF WEST COAST FACILITIES, INC. IN SUPPORT OF MOTION TO COMPEL RESPONSES BY INTELSAT USA SALES CORPORATION TO THE REQUESTS FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY WEST COAST FACILITIES INC.

To be clear, Intelsat produced only 373 pages of documents in April, 2008, consisting of correspondence between the parties and drafts of the agreement at issue.  As of plaintiff's additional production of 48 pages of some technical documents, invoices and apparent correspondence with third parties regarding satellite service on August 15 2008 (after motions to compel were filed), the total has come to a mere 459 pages of documents in response to West Coast Facilities' three sets of written discovery requests, with significant requests unfulfilled.

In opposition to the pending motion by West Coast Facilities to compel further document production, Intelsat seeks to restrict discovery based on its claims that the issues in this case are "straightforward," that it has had excess capacity on the satellite in question, and that a single document referred to as the "G-23 health

report" should be sufficient to support Intelsat's performance of the subject agreement for its claim of breach.

Discovery is not, however, determined by the self-serving machinations of a party resisting discovery. To the contrary, propounding parties are allowed broad discovery for the purposes of, *inter alia*, verifying information provided by the opposition, and for cross-examination at trial of such information. Discovery is not limited to a single legal theory proffered by a party resisting discovery, as argued by Intelsat, who seeks to preclude further discovery of facts regarding its mitigation efforts given its purported showing of excess satellite capacity.

Not only does Intelsat fail to address the real issues in the motion – namely, that it has failed to quantify any burden from West Coast Facilities' request and that it makes no viable argument against the fact that the requests seek relevant documents and are reasonably calculated to lead to the discovery of admissible evidence – but rather Intelsat takes great measures to attack counsel for West Coast Facilities and blame West Coast for delaying discovery in this case. Defense counsel disputes Intelsat's characterization of the correspondence between the parties' counsel and the conduct of defense counsel, as the issues raised in Plaintiff's opposition were already addressed in the NOTICE OF WITHDRAWAL OF PORTION OF AMENDED MOTION TO COMPEL DEPOSITION OF INTELSAT USA SALES CORPORATION;  DECLARATION OF IRA P. ROTHKEN, filed on August 14, 2008, in which defendant clarified the course of correspondence regarding depositions (which are not at issue in this motion). Rather than accept the fact that defendant, in good faith, clarified the record and withdrew a portion of the motion to compel as the parties had reengaged in setting depositions, Intelsat attempts to disparage defense counsel on matters that have no bearing on any pending motion. The purported conduct of West Coast Facilities' counsel is no defense to Intelsat's refusal to produce relevant documents sought by West Coast.

Intelsat does not dispute that it objected to and has refused to produce the valid discovery sought through documents requested by West Coast Facilities. That is what is at issue before the Court and that is what the Court should compel.

### A.    Intelsat's Performance Under the Satellite Services Agreement

In response to the pending motion to compel document production, Intelsat does not contest that discovery relevant to whether Intelsat was able to fulfill its contractual duties should be produced (*See* Exhs. E, F and G to Rothken Decl. - First Set of RFPs, #1, #3; Second Set of RFPs, #1, #2, #4, #5, #6; Third Set of RFPs, #1).  Intelsat's sole argument is that documents pertaining to its purported unused capacity on the G-23 satellite are sufficient to satisfy its discovery obligation to produce responsive documents on the issue of Intelsat's performance. Intelsat's narrow approach is simply inconsistent with the broad allowance of discovery, as stated:

> Certainly the requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms. Indeed it is not too strong to say that discovery should be considered relevant where there is **any possibility** that the information sought may be relevant to the subject matter of the action.

*Tavoulareas v. Piro*, 93 F.R.D. 11, 21 (D.D.C. 1981) (quoting C. Wright, Law of Federal Courts at 403) (emphasis added); *see also Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C. Cir. 1975) ("[A] party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case.").

Discovery is broad and cannot, in fact, be limited on the basis of the responding party's attempt to limit discovery on a legal issue to its own theory on that issue.  *See I.A.M. Nat'l Pension Fund Ben. Plan A v. Allied Corp.*, 97 F.R.D. 34, 36 (D.D.C. 1983) ("[D]iscovery is not to be limited solely to the legal theory

asserted by the plaintiffs.  If any plausible legal theory supports the relevance of the information sought, then discovery should be allowed to proceed.").  West Coast is entitled to all discovery relevant to the issue of Intelsat's ability to perform the contract.

As an element of a claim for breach of contract, Intelsat has the burden of proving that it was "ready, willing and able to provide telecommunications services" pursuant to the agreement with West Coast.  Complaint, ¶7.  *See Ledain v. Town of Ontario*, 746 N.Y.S.2d 760, (N.Y.Sup.,2002) (Elements of cause of action for breach of contract are: (1) formation of contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform and (4) resulting damage); s*ee also, Greenwich Ins. Co. v. Ice Contrs., Inc.*, 541 F. Supp. 2d 327, 333 (D.D.C. 2008) ("To prevail on a breach of contract claim, plaintiff must demonstrate that. . .plaintiff performed its contractual obligations….") (citation omitted).  Paragraph 9.3 of the agreement, for instance, provides that Intelsat warranted that it was "in compliance with all applicable laws and regulations of any jurisdiction to which it is subject concerning the subject matter of [the] Agreement."  *See* Declaration of Ira P. Rothken, Exhibit "A."  Intelsat's express contractual obligation under paragraph 9.3 requires discovery of the existence of any violation by Intelsat of any law, rule, regulation, treaty, or third party rights regarding any part of the satellite service.  Notably, such discovery is not addressed by the referenced "loading charts for the G-23 satellite" that Intelsat claims are sufficient to satisfy its discovery obligations.

**B.    Third Party Complaints Regarding Intelsat's Failure to Provide Satellite Services**

West Coast Facilities seeks discovery regarding litigation between Intelsat and other third parties arising out of the same satellite services as contracted for by West Coast Facilities (*See* Exhs. E and  to Rothken Decl. -First Set of RFPs, #7,

#8; Second Set of RFPs, #1, #2, #4, #5, #6).  Among other things, West Coast requires such discovery to support its defense that Intelsat was not, in fact, ready willing and able to perform its terms of the contract with West Coast.  Intelsat argues that such discovery amounts to a fishing expedition.  However, West Coast is aware that Intelsat has filed in the recent past, at least 5 separate lawsuits, all filed by the same counsel representing Intelsat in this lawsuit, arising out of the same kind and type of satellite services at issue with West Coast Facilities:

- *Intelsat USA Sales Corp. v. Skyframes, Inc.*, Case No. 1:04-cv-01903-HHK, filed in the District Court for the District of Columbia on November 2, 2004 (*see* Declaration of Ira Rothken, Ex. A).  Intelsat asserts claims of breach of contract and quantum meruit arising out of a satellite services agreement, claiming damages in the amount of $129,639.96.

- *Intelsat USA Sales Corp. v. Standard Comm. Corp.*, Case No. 1:06-cv-00414-HHK, filed in the District Court for the District of Columbia on March 7, 2006 (*see* Declaration of Ira Rothken, Ex. B).  Intelsat asserts claims of breach of contract and quantum meruit arising out of a satellite services agreement, claiming damages in the amount of $1,726,270.94.

- *Intelsat USA Sales Corp. v. Galaxy Broadcasting Networks, LLC*, Case No. 1:06-cv-00418-EGS, filed in the District Court for the District of Columbia on March 7, 2006 (*see* Declaration of Ira Rothken, Ex. C).  Intelsat asserts claims of breach of contract and quantum meruit arising out of a satellite services agreement, claiming damages in the amount of $437,621.78.

- *Intelsat USA Sales Corp. v. Satcom Systems, Inc.*, Case No. 1:07-cv-00119-JR, filed in the District Court for the District of Columbia on January 18, 2007 (*see* Declaration of Ira Rothken, Ex. D).  Intelsat

asserts claims of breach of contract and quantum meruit arising out of a satellite services agreement, claiming damages in the amount of $8,765,611.47.

- *Intelsat USA Sales Corp. v. 927665 Alberta, Inc.*, Case No. 1:07-cv-00118-EGS, filed in the District Court for the District of Columbia on January 18, 2007 (*see* Declaration of Ira Rothken, Ex. E).  Intelsat asserts claims of breach of contract and quantum meruit arising out of a satellite services agreement, claiming damages in the amount of $2,215,833.32.

Intelsat is either poor at choosing its customers, having incurred purported millions of dollars in damages, or there is a common reason that its customers allegedly breached their satellite services agreements.  Given that West Coast Facilities never had the opportunity to use Intelsat's services, West Coast's sole source of information as to Intelsat's purported ability to perform the agreement are other customers of Intelsat with disputes regarding satellite services.

Moreover, Intelsat claims damages against West Coast Facilities in the amount of $7,377,244.77.  In light of the strong probability that such an amount comes nowhere near approximating Intelsat's actual damages, the fact that Intelsat has claimed further millions of dollars in damages for similar or identical satellite services is certainly relevant to Intelsat's actual damages in this case.  *See LeRoy v. Sayers,* 217 A.D.2d 63, 635 N.Y.S.2d 217 (N.Y.A.D. 1 Dept.,1995) (a stipulated amount of liquidated damages that does not bear a reasonable relation to the actual amount of probable damage that would befall defendant in the event of plaintiff's default constitutes a penalty); *see also, Techworld Hotel Assocs. v. NCS Pearson, Inc.*, 2003 U.S. Dist. LEXIS 11933, *6-7 (D.D.C. July 9, 2003) ("A court may deem a liquidated damages clause invalid as a penalty on the grounds of public policy if it is plainly without reasonable relation to any probable damage which may follow a breach.") (citation omitted).

### C.    Discovery as to Intelsat's Marketing Efforts.

Intelsat argues that Defendant seeks production of documents regarding Intelsat's marketing efforts.  Intelsat Opp., p.10.  West Coast Facilities does not argue for such documents in its Motion to Compel Responses to Requests for Production of Documents.  Presumably, Intelsat is referring to West Coast's Motion to Compel Deposition Testimony.  For that purpose, West Coast refers the Court to section "C" of its Reply in support of that Motion.  Otherwise, Intelsat's argument on this point is a non-sequitur.

Defendant does have a right to discovery related to efforts Intelsat has taking to mitigate its alleged damages and other allocations of resources affecting such potential mitigation (*See* Exhs. E, F and G to Rothken Decl. - First Set of RFPs, #1, #2, #3, #6 #7, #8, #9; Second Set of RFPs, #1, #3, #4; Third Set of RFPs, #1).  In the New York case of *Holy Properties Ltd., L.P. v. Kenneth Cole Productions, Inc***.** 87 N.Y.2d 130, 661 N.E.2d 694 (N.Y., 1995), the Court stated that, "the law imposes upon a party subjected to injury from breach of contract, the duty of making reasonable exertions to minimize the injury ( *Wilmot v. State of New York,* 32 N.Y.2d 164, 168-169, 344 N.Y.S.2d 350, 297 N.E.2d 90; *Losei Realty Corp. v. City of New York,* 254 N.Y. 41, 47, 171 N.E. 899)"  Defendant's discovery requests are designed to explore that relevant area of inquiry.  Accordingly, the motion to compel should be granted.

### D.    Intelsat's Litigation Strategy

Intelsat argues that West Coast is not entitled to the core work product of Intelsat's counsel.  West Coast does not, of course, seek documents subject to the attorney-client privilege.  However West Coast is entitled to a full and comprehensive privilege log to allow West Coast to review and analyze the validity of any claimed privilege.  Fed. R. Civ. Proc. 26(b)(5)(A)(ii) (requiring

description of the "the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

The document requests propounded to Plaintiff Intelsat are directly relevant to both the breach of contract and quantum meruit claims by Intelsat as well as West Coast's affirmative defenses. The burden on Intelsat to respond by producing responsive documents is thus justified and outweighed by West Coast's need for such discovery. Accordingly, defendant respectfully requests that its motion to compel be granted.


Dated: August 25, 2008                    ROTHKEN LAW FIRM LLP

                                          _____
                                          Ira P. Rothken, Esq.,
                                          Attorney for Defendant West Coast
                                          Facilities Inc.

                                          3 Hamilton Landing, Suite 280
                                          Novato, CA 94949
                                          Telephone: (415) 924-4250
                                          Facsimile: (415) 924-2905

                                          Brendan J. McMurrer (DC Bar # 493424)
                                          SIDLEY AUSTIN LLP
                                          1501 K Street, N.W.
                                          Washington, D.C. 20005
                                          Phone: (202) 736-8000
                                          Fax: (202) 736-8711
                                          Email: bmcmurrer@sidley.com

## <u>DECLARATION OF IRA P. ROTHKEN</u>

I, IRA P. ROTHKEN, hereby declare:

1.      I am an attorney duly licensed and admitted to appear *pro hac vice* in this proceeding on behalf of the defendant, West Coast Facilities Inc.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached hereto as Exhibit "A" is a true and correct copy of the Complaint in the matter of *Intelsat USA Sales Corp. v. Skyframes, Inc.*, Case No. 1:04-cv-01903-HHK, filed in the District Court for the District of Columbia on November 2, 2004.

3.      Attached hereto as Exhibit "B" is a true and correct copy of the Complaint in the matter of *Intelsat USA Sales Corp. v. Standard Comm. Corp.*, Case No. 1:06-cv-00414-HHK, filed in the District Court for the District of Columbia on March 7, 2006.

4.      Attached hereto as Exhibit "C" is a true and correct copy of the of the Complaint in the matter of *Intelsat USA Sales Corp. v. Galaxy Broadcasting Networks, LLC*, Case No. 1:06-cv-00418-EGS, filed in the District Court for the District of Columbia on March 7, 2006

5.      Attached hereto as Exhibit "D" is a true and correct copy of the Complaint in the matter of *Intelsat USA Sales Corp. v. Satcom Systems, Inc.*, Case No. 1:07-cv-00119-JR, filed in the District Court for the District of Columbia on January 18, 2007.

6.      Attached hereto as Exhibit "E" is a true and correct copy of the Complaint in the matter of *Intelsat USA Sales Corp. v. 927665 Alberta, Inc.*, Case No. 1:07-cv-00118-EGS, filed in the District Court for the District of Columbia on January 18, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed within the United States on August 25, 2008.

_____

Ira P. Rothken, Esq.,

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 25, 2008, a copy of the

foregoing document was served upon the following by electronic mail and eFiling:

>David I. Bledsoe, Esq.
>300 North Washington Street, Suite 708
>Alexandria, VA  22314
>Tel: (703) 379-9424
>Fax: (703) 684-1851
>bledsoelaw@earthlink.net

>_____
>Jared R. Smith (CA Bar # 130343)
>ROTHKEN LAW FIRM LLP
>3 Hamilton Landing, Suite 280
>Novato, CA  94949
>Telephone:   (415) 924-4250
>Facsimile:    (415) 924-2905

EXHIBIT  A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

INTELSAT USA SALES CORPORATION,    )
     A Delaware Corporation,    )
     )
     3400 International Drive    )
     Washington DC  20008    )
     )
     )
     Plaintiff,    )
     )
v.    )    CA No. _____
     )
SKYFRAMES, INC.,    )
     A Texas Corporation,    )
     )
     32432 Alipaz Street    )
     Suite M    )
     San Juan Capistrano, CA 92675    )
     )
     Defendant.    )
     )
SERVE:  Jehu Hand    )
     24351 Pasto Rd Ste B    )
     Dana Point, CA 92629    )
     Registered Agent.    )
_____  )

## **COMPLAINT**

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant Skyframes, Inc., and pleads as follows:

1.    Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.    Defendant Skyframes, Inc. ("Skyframes") is a Texas corporation with its

principal place of business in the State of California.

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4.      Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia and defendant has also irrevocably consented to the jurisdiction of this court.  Exhibit 1, ¶  21.

5.      On November 19, 2002, Intelsat USA and Skyframes entered into a Nonexclusive Service Agreement ("NSA").  A copy of the NSA is attached hereto as Exhibit 1.  Under the terms of the NSA, Intelsat USA agreed to provide Skyframes with certain telecommunications services, and Skyframes agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services

6.      Pursuant to the NSA, an initial Service Contract was executed between plaintiff and defendant on November 19, 2002.   A second Service Contract was executed between plaintiff and defendant on April 2, 2003, and a third Service Contract was executed between plaintiff and defendant on February 2, 2004.  The third Service Contract was to have expired on January 13, 2005.  The Service Contracts are collectively attached hereto as Exhibit 2.

7.      Plaintiff provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

8.      Pursuant to the NSA and the Service Contract,  as of October 21, 2004, plaintiff has issued invoices totaling $129,639.96 to defendant, which invoices defendant has failed to pay.  The unpaid invoices are collectively attached hereto as Exhibit 3.

9.      Defendant has never disputed any invoice issued by plaintiff.  Under the terms of the NSA, such invoices are final.

10.      On September 15, 2004, pursuant to the NSA, plaintiff terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment.  Under the terms of the NSA, all amounts due from defendant to plaintiff under the remaining term of the Service Contract became immediately due and payable at that time.

11.      Pursuant to the NSA and the Service Contract, as of October 21, 2004, defendant owes plaintiff the sum of $129,639.96, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

12.      Despite repeated demand for payment, defendant has failed to make payments as due.

## <u>COUNT ONE</u>

### (Breach of Contract)

13.      Plaintiff incorporates the allegations of paragraphs 1 through 12 above.

14.      Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

15.      Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff under those agreements and by failing to pay plaintiff's invoices.

16.      Plaintiff has been damaged as a result of defendant's breaches.

17.     Under the terms of the NSA, plaintiff is entitled to its cost of collection of this debt.

## **COUNT TWO**

(Quantum Meruit/Unjust Enrichment)

18.     Plaintiff incorporates the allegations of paragraphs 1 through 17 above.

19.     Plaintiff has conferred benefits on defendant by providing telecommunications services for defendant's use.

20.     Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

21.     It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

22.     Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.

WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Skyframes, Inc. in the amount of $129,639.96, together with interest, its costs herein, and its attorneys' fees, and such other relief as to the Court seems proper.

INTELSAT USA SALES CORPORATION
By Counsel

_David I. Bledsoe (signed)_
David I. Bledsoe
Bar Number 422596
601 King Street
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

EXHIBIT  B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION, )<br>A Delaware Corporation, )<br> )<br>3400 International Drive )<br>Washington DC 20008 )<br> )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>STANDARD COMMUNICATIONS CORP., )<br>A Florida Corporation, )<br> )<br>9858 Glades Road )<br>Building 114 )<br>Boca Raton FL 33434 )<br> )<br>Defendant. )<br> )<br>SERVE: Neal Simmons )<br> 7110 NW 4th Avenue )<br> Boca Raton FL 33487 )<br> Registered Agent. )<br> ) | CA No. _____ |

## COMPLAINT

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant Standard Communications Corp., and pleads as follows:

1.     Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.     Defendant Standard Communications Corp. ("Standard") is a Florida

corporation with its principal place of business in the State of Florida.

3.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4.    Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia, and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 16.

5.    On October 24, 2004, Intelsat USA and Standard entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Standard with certain telecommunications services, and Standard agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services

6.    Plaintiff provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

7.    Pursuant to the NSA and the Service Contracts, as of December 5, 2005, plaintiff has issued invoices totaling $1,726,270.94 to defendant, which invoices defendant has failed to pay. A Statement of Account is attached hereto as Exhibit 2.

8.    Defendant has never disputed any invoice issued by plaintiff. Under the terms of the NSA, such invoices are final.

9.    On September 13, 2005, pursuant to the NSA, plaintiff terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment. Under

the terms of the NSA, all amounts due from defendant to plaintiff under the remaining term of the Service Contract became immediately due and payable at that time.

10. Pursuant to the NSA and the Service Contract, as of December 5, 2005, defendant owes plaintiff the sum of $1,726,270.94, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

11. Despite repeated demand for payment, defendant has failed to make payments as due.

## COUNT ONE

### (Breach of Contract)

13. Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

14. Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

15. Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff under those agreements and by failing to pay plaintiff's invoices.

16. Plaintiff has been damaged as a result of defendant's breaches.

17. Under the terms of the NSA, plaintiff is entitled to its cost of collection of this debt.

## COUNT TWO

### (Quantum Meruit/Unjust Enrichment)

18. Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

19. Plaintiff has conferred benefits on defendant by providing telecommunications services for defendant's use.

20. Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

21. It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

22. Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.

WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Standard, Inc. in the amount of $1,726,270.94, together with interest, its costs herein, and its attorneys' fees, and such other relief as to the Court seems proper.

INTELSAT USA SALES CORPORATION
By Counsel

David I. Bledsoe
Bar Number 422596
601 King Street
Alexandria, VA 22314
703-379-9424
703-684-1851(fax)

EXHIBIT  C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT USA SALES CORPORATION,<br>A Delaware Corporation,<br><br>3400 International Drive<br>Washington DC 20008<br><br><br>Plaintiff,<br><br>v.<br><br>GALAXY BROADCASTING NETWORKS, LLC<br>A Nevada Limited Liability Company<br><br>6100 Neil Road<br>Suite 500<br>Reno NV 89511<br><br>Defendant.<br><br>SERVE: Lakshi Manney<br>2900 Linden Lane<br>Suite 100<br>Silver Spring MD 20910<br>Registered Agent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CA No. _____ |

## **COMPLAINT**

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant Galaxy Broadcasting Networks, LLC, and pleads as follows:

1.     Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.     Defendant Galaxy Broadcasting Networks, LLC ("Galaxy") is a Nevada

limited liability company with its principal place of business in the State of Maryland.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 16.

5. On October 24, 2004, Intelsat USA and Galaxy entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Galaxy with certain telecommunications services, and Galaxy agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services

6. Plaintiff provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

7. Pursuant to the NSA and the Service Contracts, as of December 5, 2005, plaintiff has issued invoices totaling $437,621.78 to defendant, which invoices defendant has failed to pay. A Statement of Account is attached hereto as Exhibit 2.

8. Defendant has never disputed any invoice issued by plaintiff. Under the terms of the NSA, such invoices are final.

9. On September 15, 2004, pursuant to the NSA, plaintiff terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment. Under

the terms of the NSA, all amounts due from defendant to plaintiff under the remaining term of the Service Contract became immediately due and payable at that time.

10. Pursuant to the NSA and the Service Contracts, as of December 5, 2005, defendant owes plaintiff the sum of $437,621.78, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

11. Despite repeated demand for payment, defendant has failed to make payments as due.

## COUNT ONE

### (Breach of Contract)

13. Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

14. Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

15. Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff under those agreements and by failing to pay plaintiff's invoices.

16. Plaintiff has been damaged as a result of defendant's breaches.

17. Under the terms of the NSA, plaintiff is entitled to its cost of collection of this debt.

## COUNT TWO

### (Quantum Meruit/Unjust Enrichment)

18. Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

19. Plaintiff has conferred benefits on defendant by providing telecommunications services for defendant's use.

20.     Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

21.     It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

22.     Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.

WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Galaxy Broadcasting Networks, LLC in the amount of $437,621.78, together with interest, its costs herein, and its attorneys' fees, and such other relief as to the Court seems proper.

INTELSAT USA SALES CORPORATION
By Counsel

David I. Bledsoe
Bar Number 422596
601 King Street
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

EXHIBIT  D

FILED

JAN 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTELSAT USA SALES CORPORATION, )
A Delaware Corporation, )
)
3400 International Drive )
Washington DC 20008 )
)
)
Plaintiff, )
)
v. )
)
SATCOM SYSTEMS, INC. )
A Nevada Corporation, )
)
2333 North Valley Street )
Burbank CA 91505-1114 )
)
Defendant. )
)
SERVE: )
CSC Services of Nevada, Inc. )
502 East John Street )
Carson City NV 89706 )
Registered Agent. )
)

CASE NUMBER 1:07CV00119

JUDGE: James Robertson

DECK TYPE: Contract

DATE STAMP: 01/18/2007

## **COMPLAINT**

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant Satcom Systems, Inc. ("Satcom"), and pleads as follows:

1.      Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.      Defendant Satcom is a Nevada corporation with its principal place of

business in the State of California.

9. Pursuant to the NSA and the Service Contract, as of January 10. 2007, defendant owes plaintiff the sum of $8,765,611.47, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

10. Despite repeated demand for payment, defendant has failed to make payments as due.

## COUNT ONE

### (Breach of Contract)

11. Plaintiff incorporates the allegations of paragraphs 1 through 10 above.

12. Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

13. Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff under those agreements and by failing to pay plaintiff's invoices.

14. Plaintiff has been damaged as a result of defendant's breaches.

15. Under the terms of the NSA, plaintiff is entitled to its cost of collection of this debt.

## COUNT TWO

### (Quantum Meruit/Unjust Enrichment)

16. Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

17. Plaintiff has conferred benefits on defendant by providing telecommunications services for defendant's use.

18. Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4. Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia, and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 13.

5. On April 25, 2005, Intelsat USA and Satcom entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Satcom with certain telecommunications services, and Satcom agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services.

6. Plaintiff provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

7. Pursuant to the NSA and the Service Contracts, as of January 10. 2007, plaintiff has issued invoices totaling $8,765,611.47 to defendant, which invoices defendant has failed to pay. Defendant has never disputed any invoice issued by plaintiff. Under the terms of the NSA, such invoices are final.

8. On October 16, 2006, pursuant to the NSA, plaintiff terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment. Under the terms of the NSA, all amounts due from defendant to plaintiff under the remaining term of the Service Contract became immediately due and payable at that time.

19.    It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

20.    Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.


WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Satcom Systems, Inc. in the amount of $8,765,611.47, together with interest, its costs herein, and its attorneys' fees, and such other relief as to the Court seems proper.

                                        INTELSAT USA SALES CORPORATION
                                        By Counsel

David I. Bledsoe
Bar No 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

Contract Number: 04165-000
Customer Number: 26928

**NON-EXCLUSIVE SERVICE AGREEMENT ("Agreement") DATED THIS _____ DAY OF _____ 2005** (the "Effective Date") for the supply of Services BETWEEN

INTELSAT USA SALES CORP. ("Intelsat"), a company incorporated under the laws of the State of Delaware with offices at 3400 International Drive, N.W., Washington, D.C. 20008; AND SATCOM SYSTEMS, INC., a company incorporated under the laws of the State of Nevada with offices at 2333 N. Valley Street Burbank, CA 91505-1114 (the "Customer"). Intelsat and the Customer shall each be referred to herein individually as a "Party" and collectively as the "Parties".

## THE PARTIES HEREBY AGREE AS FOLLOWS:

### 1. TERM

This Agreement shall start on the Effective Date and last for five years and continue thereafter until terminated by either Party giving the other Party 90 days written notice.

### 2. THE SERVICES

2.1 The Customer may purchase services from Intelsat during the Term. Intelsat may, at its sole discretion and without giving any reason, refuse to accept any such request for services. If Intelsat agrees, the Parties shall enter into a binding Service Contract under this Agreement for the supply of the service ("Service"), which shall specify the terms for the provision of the Service and take precedence over this Agreement. The terms of this Agreement shall apply to any Service Contracts for the duration of such Service Contracts (even if such exceeds the Term).

2.2 The services Intelsat offers are at https://ibn.intelsat.com/service_contracts (Service Descriptions and Addenda). Intelsat may from time to time amend or withdraw any Service Descriptions, always provided that any such amendment or withdrawal shall not apply to existing Services.

2.3 All services are offered on a non-exclusive basis for the Customer's own use, or for use as a component of another product for its own use, or sale to its own customers. The Customer may not otherwise distribute or resell any Services without the express written agreement of Intelsat.

2.4 The Customer shall be responsible, at its own expense, for interconnection with the Services at the Service Demarcation Points (SDP) specified in a Service Contract. Intelsat shall have no liability for Services beyond these points.

2.5 The Customer may renew or extend a Service of 6 months or longer by giving Intelsat notice that it wishes to do so at least 90 days before the Service end date set out in the Service Contract ("SED"), subject to reaching agreement on price and terms within 30 days Intelsat will otherwise be free to remarket the Satellite capacity used for that Service.

2.6 If the Customer continues to use a Service past its SED, Intelsat may, at its sole option, cease to supply the Service, or continue to supply it at either the rate charged in the Service Contract or the then-current market rate.

### 3. CHARGES AND PAYMENT

3.1 "Charges" means all charges specified in a Service Contract or otherwise due to Intelsat. Recurring Charges shall be paid monthly in arrears. The Customer shall pay all Charges in US$ within 45 days of the date of the invoice. Any payment not received by its due date will be subject to interest at a rate of 18% per year. All payments shall be made in full free and clear of any set-off, restriction, condition or deduction. Payments shall only be deemed received when they reach the following account. Intelsat USA Sales Corp. Citibank FSB, Washington, D.C., ABA # 254070116 Account number 15098572.

3.2 Unless the Customer notifies Intelsat of any dispute within 20 days of the date of an invoice, the invoice shall be considered final

and undisputed. The Customer shall pay all undisputed amount by the relevant payment-due date.

3.3 Intelsat may require the Customer to provide it with financial security ("Collateral") for any Service at any time during its term as security for payment of Charges and other liabilities. The Customer shall still be responsible for the timely payment of Charges. Intelsat shall be entitled to call upon any Collateral for any late payment or other liabilities that the Customer may incur and the Customer shall be obliged to replenish the Collateral. Failure to do so will be a material breach of this Agreement. Intelsat will return any remaining Collateral to the Customer after the termination of the Service Contract once all liabilities have been settled.

3.4 The Customer shall pay any and all taxes and imposts of any nature whatsoever levied on any Service, save for taxes imposed upon or measured by Intelsat's income in the USA. If any taxes are required to be withheld from amounts payable to Intelsat, or to the extent Intelsat is required to pay or actually pays any taxes in the first instance, any amounts payable to Intelsat by the Customer shall be increased so that Intelsat receives the amount it would have received had no taxes been imposed.

### 4. SERVICE LEVELS

4.1 Intelsat will use reasonable efforts to provide each Service as set out in its Service Contract.

4.2 If a "Service Interruption" (that is a Customer-reported outage to a Service which lasts for more than 60 minutes from the time it is reported to Intelsat) occurs, following verification by Intelsat, Intelsat shall give the Customer a credit against future Charges for that Service calculated as a pro-rata proportion of the recurring monthly Charge for that Service (an "Interruption Credit").

4.3 Intelsat shall not be liable for any failure to supply any Service and in no event shall Interruption Credits be given in respect of any Service Interruption that is caused by the Customer or its default or by events beyond Intelsat's reasonable control.

### 5. SUSPENSION AND TERMINATION FOR DEFAULT

5.1 Intelsat may, at its option, terminate this Agreement (including all Service Contracts) or a Service Contract by notice if the Customer (i) fails to make any payment due to Intelsat within 15 days of receiving notice that such payment is late; or (ii) breaches any warranty; or (iii) is otherwise in material breach of this Agreement and does not cure that breach within 30 days of receiving notice from Intelsat.

5.2 Provided that the Customer is not in material breach of any of its obligations under this Agreement, the Customer may terminate a Service Contract by giving written notice if Intelsat fails to meet the relevant Service minimum performance criteria in the Intelsat Technical Guidelines and Operating Procedures due solely to Intelsat's negligence for a period greater than 15 consecutive calendar days following Intelsat's receipt of notice of such failure.

5.3 Either Party may terminate this Agreement if the other Party files a petition in bankruptcy or is adjudicated bankrupt or insolvent, or files or has filed against it any petition or answer seeking any reorganisation, composition, liquidation or similar relief for itself under

Confidential and Proprietary
US Version 001-10 February 2005

Intelsat USA Sales Corp.



FILED

07 0119    JAN 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

any applicable statute, law or regulation or makes any general assignment for the benefit of its creditors, or admits in writing its inability to pay its debts generally as they become due.

5.4  Intelsat may terminate this Agreement if there is a change in the ownership or corporate holding of the Customer that in Intelsat's reasonable opinion will affect its position, rights or interests.

5.5  Upon termination or expiration of this Agreement (or a Service Contract) for whatever reason, the Customer shall cease using the Services and the Satellite capacity. All outstanding indebtedness of the Customer (under the Agreement or the Service Contract as appropriate) to Intelsat shall become immediately due and payable. Further, for each Service Contract that has been terminated by Intelsat, all amounts due to be paid by the Customer to the end of that Service Contract shall immediately become due and payable. The Parties agree this is a proper assessment of the loss of bargain and damages Intelsat will incur, and is not a penalty.

5.6  Intelsat may suspend Services in whole or in part (i) if necessary to comply with any applicable laws, regulations or government orders, or (ii) if the Customer's signals are being blocked or jammed by a third party; (iii) if an Earth Station is not in compliance with the Technical Guidelines and Operating Procedures; or (iv) in circumstances where Intelsat is entitled to terminate this Agreement for the Customer's default;

5.7  Intelsat may also suspend Services by giving the Customer reasonable written notice in order to perform testing, maintenance or adjustment works. Intelsat shall seek to coordinate the timing of such action with the Customer in order to minimise any interruption to Services, and shall use reasonable efforts to minimise any such suspensions. In "Urgent Operational Cases", (that is situations that in the opinion of Intelsat on the information then available have or are likely to cause: (i) damage to the Satellites or related infrastructure of Intelsat or a third party or (ii) major and sustained interference with other services) Intelsat may suspend Services without notice.

## 6.  LIMITATION OF LIABILITY

6.1  INTELSAT WARRANTS IT WILL PROVIDE THE SERVICES WITH APPROPRIATE SKILL. ANY AND ALL OTHER EXPRESS OR IMPLIED WARRANTIES ARE EXPRESSLY EXCLUDED AND DISCLAIMED BY INTELSAT.

6.2  WITH THE EXCEPTION OF CLAIMS FOR DEATH OR PERSONAL INJURY DUE TO INTELSAT'S NEGLIGENCE, FOR WHICH THERE IS NO LIMITATION IMPOSED, IT IS EXPRESSLY AGREED THAT INTELSAT'S SOLE OBLIGATION AND THE CUSTOMER'S EXCLUSIVE REMEDY FOR ANY DIRECT LOSS WHATSOEVER ARISING OUT OF OR RELATING TO THIS AGREEMENT IS INTERRUPTION CREDITS AND THE CUSTOMER AGREES THAT THESE ARE A GENUINE PRE-ASSESSMENT OF LOSS AND DAMAGE.

6.3  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER ARISING OUT OF OR UNDER THIS AGREEMENT WHETHER UNDER CONTRACT, WARRANTY, TORT OR OTHERWISE, INCLUDING LOSS OF REVENUE OR PROFITS, REGARDLESS OF THE FORESEEABILITY OF SUCH DAMAGES.

6.4  THE CUSTOMER SHALL REQUIRE ALL OF ITS CUSTOMERS TO ABIDE BY TERMS AND CONDITIONS SIMILAR TO THOSE IN THIS AGREEMENT, INCLUDING DISCLAIMERS OF LIABILITY IN FAVOUR OF INTELSAT AND ITS AFFILIATES SUBSTANTIALLY SIMILAR TO (BUT IN NO CASE LESS BROAD THAN) THOSE SET FORTH IN THIS SECTION.

## 7.  INDEMNIFICATION

7.1  The Customer shall be liable for and shall indemnify and hold harmless Intelsat (including any affiliate, or director, officer, employee or agent of Intelsat or its affiliates) harmless from and against any direct or indirect loss, damage, liability or expense arising from any

claim by a third party, in connection with the provision of Services and arising out of or in connection with (i) the fault or negligence or breach of this Agreement by the Customer; or (ii) the Customer's breach of any national laws, rules and regulations applicable to it; or (iii) the Customer's or any third party end-user's use of the Services regardless of cause by the Customer, its affiliates or customers, including any claims relating to the information or content of programming or other material displayed or transmitted.

7.2  The Customer also shall be liable for and shall indemnify and hold harmless Intelsat from and against any loss or damage to Intelsat's Satellites or related Intelsat provided infrastructure and facilities that is caused by any act or omission of the Customer.

## 8.  FORCE MAJEURE

8.1  Neither Party shall be liable for any failure to perform under this Agreement due to any unforeseeable act, event or cause beyond its reasonable control ("Force Majeure Event") during the duration of the Force Majeure Event. Upon removal or cessation of the Force Majeure Event, all obligations under this Agreement shall resume.

8.2  Except in cases where a Force Majeure Event has been invoked by the Customer, the Customer shall remain liable for all of its payment obligations hereunder regardless of the occurrence of a Force Majeure Event.

8.3  If a Force Majeure Event continues for more than thirty (30) days, the Parties shall meet to negotiate in good faith how to proceed. In no event shall either Party take any unilateral action under this Article.

## 9.  WARRANTIES

9.1  The Customer warrants that (i) it has obtained all applicable clearances and licences, consents and approvals necessary to enable it to operate, receive and use the Services and to perform its other obligations under this Agreement; (ii) it is in compliance with and performance of its obligations hereunder will not violate or conflict with, any applicable law or regulation of any jurisdiction to which it is subject; (iii) it will only use and will procure that its customers only use the Services and/or display or transmit any information or content using or in connection with the Services in compliance at all times with all applicable laws and regulations; and (iv) it will follow established practices and procedures for frequency co-ordination and will not use the Services in a manner that could reasonably be expected to interfere with or cause physical harm to the Satellites or other services that Intelsat offers. These Warranties shall apply throughout the Term and until the SED of the last remaining Service Contract.

9.2  Each Party represents and warrants to the other Party that as of the date of this Agreement (i) it has the right, power and authority to enter into and fully perform its obligations hereunder (ii) the execution, delivery and performance of this Agreement have been duly authorised by all necessary corporate action; and (iii) this Agreement constitutes legal, valid and binding obligations on that Party.

## 10.  CONFIDENTIALITY

10.1  Intelsat and the Customer agree that it may be necessary to the performance of this Agreement for a Party to disclose Confidential Information (that is information of a confidential or proprietary nature relating to this Agreement or a Party, its affiliates or other representatives that is reduced to writing and marked "Confidential" or similarly, not including information (i) developed independently or lawfully received from a third party without an obligation of confidentiality, or (ii) that reaches the public domain other than by a breach of this Agreement) to the other Party. The receiving Party shall use the same standard of care to maintain the security and confidentiality of all Confidential Information received from the disclosing Party as the receiving Party uses in the maintenance of the security and confidentiality of its own Confidential Information, and in any event no less than reasonable care. Neither Party shall,

Contract Number: 04165-000
Customer Number: 26928

without the written consent of the other, disclose Confidential Information to any third party, unless required by law or competent authority to do so. Prior to such disclosure, the receiving Party shall provide the disclosing Party with sufficient notice to permit the disclosing Party to appeal or contest such requirement. Upon termination or expiration of this Agreement, each Party shall destroy all Confidential Information belonging to the other Party and confirm in writing to the other Party it has done so.

10.2 Intelsat may state that the Customer is a customer and may publish this and the Customer's contact details as it sees fit.

10.3 The obligations contained in this Section shall survive the termination or expiration of this Agreement for a period of 5 years.

## 11. TECHNICAL

11.1 The Customer shall ensure that all Earth Stations comply with the Intelsat Technical Guidelines and Operating Procedures and immediately remedy any non-compliance.

11.2 Intelsat may at any time alter the method by which it provides a Service, replace the Satellite on which Service is provided and/or manage Satellite Capacity during the term of a Service Contract, always provided this does not result in an appreciable degradation in any Service below the provisions of the Intelsat Technical Guidelines and Operating Procedures. The Customer agrees to operate on either sense of polarisation and across an entire frequency band or bands. Intelsat will provide reasonable written notice to the Customer concerning any Service to be replaced, relocated or reconfigured with information on the alternative assignment. Intelsat will provide the equivalent performance on any replacement Satellite in terms of power and bandwidth to continue the Service. Customers are encouraged to change modulation schemes to improve their efficient use of Satellite capacity.

11.3 In cases of Satellite failure or malfunction, Intelsat shall restore affected Services as far as reasonably possible in accordance with the Restoration Policy at https://ipo.intelsat.com/service_contracts

## 12. NOTICES

12.1 All notices under this Agreement shall be made in writing, by e-mail, fax or courier, and shall be deemed to be received upon delivery to the other Party at the above address marked as follows:

Intelsat: Telephone: (202) 944-7209, Fax: (202) 944-8120, e-mail uscontractnotices@intelsat.com, Attention: Director, Contracts

SatCom Systems, Inc.: Telephone (818) 526-1700, Fax (818) 526-1715, e-mail (soumias@satcomsystemsinc.com), Attention: Tom Soumias, CEO

## 13. JURISDICTION

This Agreement shall be governed and interpreted in all respects by the laws of the State of New York and both Parties irrevocably agree that the United States District Court for the District of Columbia shall have jurisdiction to settle any dispute arising out of or in connection with this Agreement, save that Intelsat shall also have the right to take proceedings against the Customer in the national courts of the jurisdiction of the Customer's incorporation. Nothing contained in this

Section shall limit any rights either Party may have to seek immediate injunctive relief against the other Party.

## 14. ASSIGNMENT

14.1 The Customer may not assign, transfer or sublease any rights or obligations under this Agreement to any other party without the express written consent of Intelsat.

## 15. MISCELLANEOUS

15.1 (i) This Agreement may only be amended by written agreement of the Parties. (ii) If any provision of this Agreement is found to be invalid or unenforceable, it shall not affect the validity and enforceability of any other provision of this Agreement, and the invalid or unenforceable provision shall, if possible, be replaced with a provision consistent with the intentions of the Parties. (iii) Any Sections which are intended to survive the termination of this Agreement shall survive. (iv) No waiver by either Party of any default by the other Party shall affect or impair either Party's rights in respect of any subsequent default of any kind by the other Party. Acceptance by Intelsat of any payments by the Customer shall not be deemed a waiver of any preceding breach by the Customer of any of the terms or conditions of this Agreement. No waiver shall be effective unless made in writing by a Party's authorised representative. (v) The rights, powers and remedies provided in this Agreement are cumulative and may be exercised singularly or cumulatively. (vi) This Agreement is intended for the sole benefit of the Parties and no third party (including, without limitation, customers of the Customer) may seek to enforce or benefit from this Agreement. (vii) The relationship created by this Agreement is that of independent contractors, and is in no way a partnership, principal-agent or other such relationship and the Customer warrants it will not hold itself out as entitled to bind Intelsat in any way whatsoever.

15.2 This Agreement consists of these Terms and Conditions, Addenda 1 and 2, the relevant Service Descriptions, and any Service Contracts. The headings in this Agreement are for convenience only and shall not affect the interpretation of this Agreement. The language of this Agreement and all other communications between the Parties regarding this Agreement and this Agreement shall be English. Any period of time referred to in this Agreement shall be calculated in Greenwich Mean Time. The following terms shall have the following meanings:

**Earth Station** means any antennas, switching facilities and related equipment owned or operated by the Customer that form an interconnection point with a Service.

**Including** means including without limitation, whether capitalised or not.

**Satellite** means an object located or intended to be located beyond the earth's atmosphere, that is or will be used for radio communications owned or operated by Intelsat or an affiliate.

15.3 This Agreement constitutes the entire agreement of the Parties and supersedes all prior correspondence, representations proposals, negotiations, understandings and agreements of the Parties oral or written, with respect to the subject matter.

Contract Number: 04166-000
Customer Number: 26928

IN WITNESS WHEREOF, each of the Parties has duly executed and delivered this Agreement effective on the day and year first above written.

INTELSAT USA SALES CORP.

Signed by: _____

Print name: _____

Title: _____

Date: _____

SATCOM SYSTEMS, INC.

Signed by: _____

Print name: _____

Title: _____

Date: _____

EXHIBIT  E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTELSAT USA SALES CORPORATION,<br>A Delaware Corporation,<br><br>3400 International Drive<br>Washington DC 20008<br><br><br>Plaintiff,<br><br>v.<br><br>927665 Alberta, Inc., operating as<br>AVROSAT<br>A Canadian Corporation,<br><br>230 900 6th Avenue SW<br>Calgary, Alberta T2P 3K2<br>CANADA<br><br>Defendant.<br><br>SERVE: Judith Meason<br>Secretary and Treasurer<br>Avro Sat<br>230 900 6th Avenue SW<br>Calgary, Alberta T2P 3K2<br>CANADA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CA No. _____ |

## __COMPLAINT__

Plaintiff Intelsat USA Sales Corporation, by counsel, files this Complaint against

defendant 927665 Alberta, Inc.,operating as AvroSat ("Avrosat"), and pleads as follows:

1.       Plaintiff Intelsat USA Sales Corporation ("Intelsat USA") is a Delaware

corporation with its principal place of business in the District of Columbia.

2.     Defendant Avrosat is a Canadian corporation with its principal place of business in Canada.

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

4.     Jurisdiction and venue in this Court is proper, as defendant has breached its contract with plaintiff in the District of Columbia, and defendant has also irrevocably consented to the jurisdiction of this court. Exhibit 1, ¶ 16.

5.     On October 24, 2004, Intelsat USA and Avrosat entered into a Nonexclusive Service Agreement ("NSA"). A copy of the NSA is attached hereto as Exhibit 1. Under the terms of the NSA, Intelsat USA agreed to provide Avrosat with certain telecommunications services, and Avrosat agreed to pay Intelsat USA's charges and fees for such services as described in the Service Contracts made part of the NSA, and agreed to pay all invoices issued by Intelsat USA for such services.

6.     Plaintiff provided telecommunications services to defendant pursuant to the NSA and the Service Contracts, and has performed all its obligations under the NSA and the Service Contracts.

7.     Pursuant to the NSA and the Service Contracts, as of December 5, 2005, plaintiff has issued invoices totaling $2,215,833.32 to defendant, which invoices defendant has failed to pay.

8.     Defendant has never disputed any invoice issued by plaintiff. Under the terms of the NSA, such invoices are final.

9.     On September 13, 2005, pursuant to the NSA, plaintiff terminated the NSA and all Service Contracts between plaintiff and defendant for non-payment.  Under the terms of the NSA, all amounts due from defendant to plaintiff under the remaining term of the Service Contract became immediately due and payable at that time.

10.     Pursuant to the NSA and the Service Contract, as of December 5, 2005, defendant owes plaintiff the sum of $2,215,833.32, together with interest due thereafter at the rate of 16 percent, and the costs of collection.

11.     Despite repeated demand for payment, defendant has failed to make payments as due.

## COUNT ONE

### (Breach of Contract)

13.     Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

14.     Under the terms of the NSA, defendant agreed to pay Intelsat USA's charges and invoices.

15.     Defendant has breached the terms of the NSA and the Service Contracts by failing to pay for the services rendered by plaintiff under those agreements and by failing to pay plaintiff's invoices.

16.     Plaintiff has been damaged as a result of defendant's breaches.

17.     Under the terms of the NSA, plaintiff is entitled to its cost of collection of this debt.

## COUNT TWO

### (Quantum Meruit/Unjust Enrichment)

18.     Plaintiff incorporates the allegations of paragraphs 1 through 11 above.

19.     Plaintiff has conferred benefits on defendant by providing telecommunications services for defendant's use.

20.     Defendant was aware of the benefits conferred by plaintiff, and has accepted those benefits.

21.     It would be inequitable for defendant to retain such benefits without compensation to plaintiff.

22.     Plaintiff has been damaged as a result of defendant's failure to pay for the benefits conferred on defendant by plaintiff.


WHEREFORE plaintiff Intelsat USA Sales Corporation demands judgment in its favor against defendant Avrosat in the amount of $2,215,833.32, together with interest, its costs herein, and its attorneys' fees, and such other relief as to the Court seems proper.

INTELSAT USA SALES CORPORATION
By Counsel


David I. Bledsoe
Bar Number 422596
300 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)